# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 9, 2017 Session

## STATE OF TENNESSEE v. CHRISTOPHER SCOTTIE ITZOL-DELEON

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2012-D-3022          Mark J. Fishburn, Judge**

---

### No. M2014-02380-SC-R11-CD – Filed August 25, 2017

---

We granted the State's application for permission to appeal in this case in order to determine (1) whether we should expressly overrule our decision in <u>State v. Barney</u>, 986 S.W.2d 545 (Tenn. 1999), and (2) whether the Court of Criminal Appeals erred in merging two of the Defendant's convictions. We expressly overrule <u>Barney</u> and hold that double jeopardy principles apply when determining whether multiple convictions of sexual offenses arise from a single act of sexual assault. We further hold that, in light of the factors we adopt herein, under the facts and circumstances of this case, the Court of Criminal Appeals did not err in merging two of the Defendant's multiple convictions. Accordingly, albeit for different reasons, we affirm the judgment of the Court of Criminal Appeals.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Affirmed;
### Remanded to the Trial Court

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Leslie E. Price, Senior Counsel; Glenn Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellant, the State of Tennessee.

Dawn Deaner, District Public Defender; Jeffrey A. DeVasher (on appeal), Laura J. Getz and Mary Kathryn Harcombe (at trial), Assistant Public Defenders, Nashville, Tennessee, for the appellee, Christopher Scottie Itzol-Deleon.

## OPINION

## Factual and Procedural Background

This matter involves repeated sexual molestations of the victim, who was twelve years old at the time of the trial, by her stepfather, the Defendant.[1] The Defendant was tried before a jury for these offenses and convicted of one count of attempt to commit aggravated sexual battery, four counts of aggravated sexual battery, and three counts of rape of a child. The trial court subsequently sentenced the Defendant to an effective term of forty years.

Upon review on direct appeal, the Court of Criminal Appeals affirmed all of the Defendant's convictions but merged the conviction of attempt to commit aggravated sexual battery with one of the child rape convictions. State v. Itzol-Deleon, No. M2014-02380-CCA-R3-CD, 2016 WL 1192806, at *25, 34 (Tenn. Crim. App. Mar. 28, 2016), perm. appeal granted (Tenn. Aug. 18, 2016). The Court of Criminal Appeals also determined that the trial court had erred in sentencing the Defendant. Accordingly, the Court of Criminal Appeals modified the Defendant's sentence to an effective term of twenty-five years.[2] Id. at *32–33.

Although the State adduced a significant amount of proof in support of the multiple charges of sexual offenses that it brought against the Defendant, all of which resulted in the jury convicting the Defendant as set forth above, the issues before us in this appeal may be determined on the basis of the proof underlying just two of the Defendant's convictions. Therefore, out of respect for the victim's privacy, we will restrict our summary of the proof to that which is necessary to resolve the specific issues before us. A comprehensive summary of the proof may be found in the Court of Criminal Appeals' opinion. See id. at *2–21.

The victim testified that, while she was in fourth or fifth grade, she was living with her mother and the Defendant. One weekend morning, she woke up and saw a note on the television in her bedroom that her mother had gone to work. She began watching the

---

[1] All of the molestations were alleged to have occurred between January 1, 2010, and July 31, 2012.

[2] The trial court sentenced the Defendant to forty years for each of the rape convictions and ordered the Defendant to serve all of his sentences concurrently, for an effective term of forty years. The Court of Criminal Appeals determined that the proof at trial did not establish that the rape offenses had been committed on dates that, due to subsequent changes in our sentencing statutes, allowed for the imposition of forty-year terms. Accordingly, the Court of Criminal Appeals modified the Defendant's sentence for each rape to twenty-five years, the maximum term provided for under the applicable statutes, and remanded for the entry of corrected judgment orders reflecting the modified sentences. Itzol-Deleon, 2016 WL 1192806, at *33–34. The majority of the Court of Criminal Appeals chose not to remand the matter to the trial court for a reconsideration of its judgment ordering concurrent service. See id. The State has not appealed this issue.

movie Lemonade Mouth.  The Defendant came into her bedroom and climbed into bed and got under the covers with her.  The victim's back was facing the Defendant.  The Defendant pulled down the victim's pants, and she felt something on her back, which she assumed was the Defendant's penis.[3]  The victim testified that she felt the Defendant's penis "[a]bove [her] butt" and between her thighs.  The victim testified that the Defendant was moving his body "up and down."  The victim stated that, by "above her butt," she meant that the Defendant's penis was outside of her rectum.  She could feel the Defendant's penis on the outside of her "butt cheeks" as he rubbed it between her legs.  She indicated on cross-examination that the Defendant's penis went into her "private part"[4] "a little bit."  After she felt "something watery or very slimy" on the "outside" of her "private part," she got out of bed and went to the bathroom.  The Defendant left her room.

Because the victim testified about more instances of molestation by the Defendant than were charged, the State provided an election of offenses.  With respect to the Defendant's actions while the victim watched Lemonade Mouth, the State set forth its election as follows:

> Count One of the Indictment alleges an act of Aggravated Sexual Battery against [the victim] (D.O.B. 4/30/2001), and refers to the following conduct:  the defendant rubbed his penis against the victim's butt.  The victim testified that she was watching Lemonade Mouth in her bedroom when the defendant came into her room and got in bed with her.  The defendant pulled the victim's pants down and began moving his penis back and forth against the victim's buttocks.  The victim testified that she felt something watery on her private part, and when the incident was over, it hurt when she used the bathroom.  This incident occurred at the Scott Valley duplex where the victim and defendant lived.
>
> . . . .
>
> Count Three[5] of the Indictment alleges an act of Rape of a Child against [the victim] (DOB:  4/30/2001) and refers to the following conduct:  the defendant penetrated the victim's genital area with his penis.  The victim testified that she was watching Lemonade Mouth in her bedroom when the defendant came into her room and got in bed with her.  The defendant pulled the victim's pants down and began moving his penis back

---

[3] During her testimony, the victim referred to the Defendant's penis as his "private part."  When shown a drawing of a naked man, she identified the penis as the body part she was calling "private part."

[4] When shown a drawing of a woman's naked body, the victim identified the genital area as the area she was describing as her "private part."

[5] The trial court dismissed Count Two at the State's request.

3

and forth against the victim's genital area between her legs. The victim testified that his private part touched her on the inside and outside of her private part. She said she felt something watery on her private part, and when the incident was over, it hurt when she used the bathroom. This incident occurred at the Scott Valley duplex where the victim and defendant lived.

After deliberating, the jury convicted the Defendant on Count One of the lesser-included offense of attempt to commit aggravated sexual battery. As to Count Three, the jury convicted the Defendant of the charged offense, rape of a child. With one judge dissenting, the Court of Criminal Appeals subsequently merged these two convictions on the basis of this Court's opinion in Barney. Itzol-Deleon, 2016 WL 1192806, at *25. We granted the State's application for permission to appeal in order to address whether the Court of Criminal Appeals erred by merging the Defendant's conviction of attempt to commit aggravated sexual battery with his conviction of rape of a child on the basis of Barney.

## Analysis

### Barney

In Barney, the defendant was convicted of eleven counts of rape of a child and seven counts of aggravated sexual battery, all involving the same victim. 986 S.W.2d at 546. Relying on this Court's decision in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), the defendant argued that five of the aggravated sexual battery convictions offended due process because those crimes had been "essentially incidental" to his commission of the associated child rape offenses. Barney, 986 S.W.2d at 547–48. The proof at trial established that, as to the five challenged convictions, the defendant first had rubbed the victim's penis with his hand and then performed fellatio on the victim. Id. at 546. The manual rubbing formed the basis for the aggravated sexual battery convictions, and the fellatio formed the basis for the rape of a child convictions. Id. at 547–48.

In Anthony, this Court considered consolidated appeals from cases in which the defendants had been convicted of armed robbery and aggravated kidnapping, "in each instance growing out of a single criminal episode." 817 S.W.2d at 300. In each case, the defendant had robbed a place of business and, during the course of the robbery, had detained one or more persons connected with the business. This Court framed the issue as "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." Id. Concluding that a double jeopardy analysis was "inadequate in resolving" this issue, the Court turned to a due process analysis under the Tennessee Constitution. Id. at 306. Relying on article I, section 8 thereof, this Court concluded that the propriety of the kidnapping convictions rested on a determination of "whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony and [was] not, therefore, sufficient to support a separate conviction for kidnapping, or whether it [was] significant enough, in

4

and of itself, to warrant independent prosecution and [was], therefore, sufficient to support such a conviction." Id. The Anthony decision generated a significant body of often conflicting case law.

In Barney, this Court technically rejected the application of Anthony to multiple sexual offenses. Barney, 986 S.W.2d at 548. Instead, this Court adopted the test enunciated by a California court in People v. Madera, 282 Cal. Rptr. 674 (Cal. Ct. App. 1991), a case involving multiple sexual offenses against a single victim. The Madera test, which was based on a California statute, required a consideration of the defendant's intent: whether the defendant's initial sexual contact with the victim "'was to commit a separate base criminal act'" or was engaged in merely "'to facilitate'" the sexual contact that immediately followed the initial contact. Barney, 986 S.W.2d at 548 (quoting Madera, 282 Cal. Rptr. at 679). The Barney Court concluded that Madera

> held that if the act in question directly facilitates or is merely incidental to the accompanying sexual conduct (such as, for example, applying lubricant to the area of intended copulation), convictions for both acts would be barred. If, however, the act in question is 'preparatory' only in the sense that it is intended to sexually arouse either the victim or the perpetrator, separate convictions are not barred.

Id. (citations omitted). The Barney Court then noted five factors that "may be relevant in determining whether conduct is directly facilitative, and thus incidental, or merely preparatory in the sense of intending to arouse the victim or perpetrator." Id. Those five factors are:

> 1. temporal proximity—the greater the interval between the acts, the more likely the acts are separate;
>
> 2. spatial proximity—movement or re-positioning tends to suggest separate acts;
>
> 3. occurrence of an intervening event—an interruption tends to suggest separate acts;
>
> 4. sequence of the acts—serial penetration of different orifices as distinguished from repeated penetrations of the same orifice tends to suggest separate offenses; and
>
> 5. the defendant's intent as evidenced by conduct and statements.

Id. at 548–49.

The Barney Court recognized that the California court was not considering the "dual conviction question under a due process challenge," id. at 548 n.2, but concluded that "the same analysis would determine that there was "no *due process* violation" in the

defendant's multiple convictions, id. at 549 (emphasis added). Thus, although the Barney Court ostensibly rejected the application of Anthony to the case before it, the Court nevertheless utilized a due process analysis to determine the propriety of multiple convictions arising from an allegedly single criminal action.

In 2012, this Court overruled Anthony and its progeny: "Anthony and the entire line of cases including a separate due process analysis in appellate review are expressly overruled." State v. White, 362 S.W.3d 559, 578 (Tenn. 2012). In White, we reasoned that, on direct appellate review, a defendant's fundamental right to due process was protected upon a determination that the jury's verdict, based upon appropriate instructions for the elements of each crime under consideration, was supported by sufficient evidence. Id. at 577–78. Thus, we held that "[t]he separate due process test articulated . . . in Anthony . . . is . . . no longer necessary to the appellate review of a kidnapping conviction accompanied by a separate felony." Id. at 578.

As noted by the majority of the panel of the Court of Criminal Appeals in this case, this Court in White did not explicitly overrule Barney. Accordingly, the majority below applied the Barney factors and determined that the two types of contact alleged in Counts One and Three "were in immediate temporal and spatial proximity to one another without intervening events or repositioning of the Defendant or the victim. The contact involved two parts of the victim's body, her buttocks and her labia, but only her labia were penetrated. There was no testimony as to the Defendant's intent." Itzol-Deleon, 2016 WL 1192806, at *25. Concluding that "the touching of the buttocks was incidental [to] accomplishing the rape," the court merged the Defendant's conviction of attempt to commit aggravated sexual battery into the Defendant's conviction of rape of a child. Id.

Although Barney ostensibly rejected the application of Anthony to multiple convictions arising out of an allegedly single course of sexual assaultive conduct, the Barney Court still analyzed the convictions before it through a due process lens. We clearly rejected in White the application of a separate due process analysis for determining on appeal the propriety of dual convictions arising from an allegedly single criminal act. Moreover, since White, we have applied double jeopardy principles, and not a due process analysis, in determining whether multiple sexual offenses could stand. See State v. Hogg, 448 S.W.3d 877, 885–87 (Tenn. 2014). Therefore, consistent with our more recent holdings, we overrule Barney based on its reliance on a due process analysis. We further hold that the propriety of multiple convictions of sexual offenses arising from an allegedly single sexual assault must be analyzed under principles of double jeopardy as set forth by this Court in State v. Watkins, 362 S.W.3d 530 (Tenn. 2012). We turn now to that analysis.

*Standard of Review*

"Whether multiple convictions violate double jeopardy is a mixed question of law and fact, which we review de novo without any presumption of correctness."

Watkins, 362 S.W.3d at 539 (citing State v. Thompson, 285 S.W.3d 840, 846 (Tenn. 2009)).

*Double Jeopardy*

We begin by recognizing that, under both the federal and state Constitutions,[6] principles of double jeopardy prohibit, among other things, "multiple punishments for the same offense imposed in a single prosecution." Id. at 541, 548. Where multiple convictions for an allegedly "same offense" arise in a single prosecution, our first task is to determine which of two categories the double jeopardy claim fits into: "unit-of-prosecution" or "multiple description." Id. at 543. "Unit-of-prosecution claims arise when defendants who have been convicted of multiple violations of the *same* statute assert that the multiple convictions are for the 'same offense.'" Id. "Multiple description claims arise in cases in which defendants who have been convicted of multiple criminal offenses under *different* statutes allege that the convictions violate double jeopardy because the statutes punish the 'same offense.'" Id. at 544. The instant case involves a multiple description claim because the Defendant was convicted of violating two different statutes, the statute proscribing aggravated sexual battery, Tenn. Code Ann. § 39-13-504,[7] and the statute proscribing rape of a child, id. § 39-13-522.[8]

The threshold inquiry for determining whether a double jeopardy violation may have occurred in a multiple description case is "whether the alleged statutory violations arise from 'the same act or transaction,'" Watkins, 362 S.W.3d at 545 (citing Blockburger v. United States, 284 U.S. 299, 301–04 (1932)), because "[w]hen a court determines that separate convictions do not arise from the same act or transaction, then there cannot be a double jeopardy violation," id. (citations omitted). Relevant considerations in this inquiry include the charging instrument, the statutory provisions at issue, and "whether the charges arise from discrete acts or involve multiple victims." Id. at 556. In cases involving an election of offenses, the State's election may also be a relevant consideration.

---

[6] The federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Similarly, the Tennessee Constitution provides that "no person shall, for the same offence, be twice put in jeopardy of life or limb." Tenn. Const. art. 1, § 10. We construe the Tennessee prohibition against double jeopardy to be co-extensive with that of the United States Constitution. See State v. Harris, 919 S.W.2d 323, 327 (Tenn. 1996).

[7] "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances: (4) The victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2010).

[8] "Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a) (2010 & Supp. 2012).

7

This threshold inquiry is the battleground issue in the instant case: whether the Defendant's dual convictions for attempt to commit aggravated sexual battery and rape of a child arose from "the same act or transaction." The Defendant claims that his actions during the Lemonade Mouth movie constituted only a single crime stemming from an indivisible course of conduct, while the State claims that the Defendant's conduct constituted two separate and distinct offenses committed sequentially.

*Same Act or Transaction*

As noted by one commentator, "Blockburger offers no guidance on how to determine when the act or transaction is the same." George C. Thomas III, A Blameworthy Act Approach to the Double Jeopardy Same Offense Problem, 83 Cal. L. Rev. 1027, 1035 n.34 (1995). The same commentator has also observed that "[t]he question of when a criminal episode constitutes a single unit of conduct is a difficult one . . . ." George C. Thomas III, A Unified Theory of Multiple Punishment, 47 U. Pitt. L. Rev. 1, 12 (Fall 1985); see also Swafford v. State, 810 P.2d 1223, 1233 (N.M. 1991) (noting that, in double jeopardy jurisprudence, "[t]he case law is replete with failed attempts at judicial definitions of the same factual event"). Nevertheless, our Court of Criminal Appeals has tackled this issue and offers us some guidance.

In State v. Stewart, our Court of Criminal Appeals considered a case in which the defendant had been convicted of multiple counts of aggravated sexual battery and rape of a child. No. M2011-01994-CCA-R3-CD, 2013 WL 3820992, at *36 (Tenn. Crim. App. July 22, 2013). The court set out eight pairs of these convictions along with the salient conduct on which the convictions were based:

1. Count 4, aggravated sexual battery involving the Defendant's touching A.G.'s genital area with his mouth or tongue, and Count 3, rape of a child involving the Defendant's performing cunnilingus on A.G. on July 22.

2. Count 6, aggravated sexual battery involving the Defendant touching M.A.'s genital area with his mouth or tongue, and Count 5, rape of a child involving cunnilingus of M.A. on July 22.

3. Count 8, aggravated sexual battery involving the Defendant's touching M.A.'s genital area with his hand or finger, and Count 7, rape of a child involving digital penetration of M.A.'s genital area on July 22.

4. Count 12, aggravated sexual battery involving the Defendant's touching M.A.'s vagina with his penis, and Count 11, involving penile penetration of M.A.'s vagina on July 22.

5. Count 15, aggravated sexual battery involving the Defendant's touching A.G.'s genital area with his hand and/or finger, and Count 14, rape of a child involving digital penetration of A.G.'s genital area on July 29.

8

6. Count 17, aggravated sexual battery involving the Defendant's touching A.G.'s genital area with his mouth and/or tongue, and Count 16, rape of a child involving cunnilingus of A.G. on July 29.

7. Count 19, aggravated sexual battery involving the Defendant's touching M.A.'s genital area with his mouth and/or tongue, and Count 18, rape of a child involving cunnilingus of M.A. on July 29.

8. Count 21, aggravated sexual battery involving the Defendant's touching M.A.'s genital area with his hand and/or finger, and Count 20, rape of a child involving the Defendant's digital penetration of M.A. on July 29.

Id. As to whether these convictions arose "from the same act or transaction," the intermediate appellate court concluded that, "[f]or each of these groupings, the Defendant's touching the victims was prefatory to the penetration, and the touching and the penetration were contemporaneous and involved the same body parts. Each grouping of convictions involve the same act or transaction." Id.

Similarly, the Court of Criminal Appeals concluded in State v. Stanhope that the conduct underlying the defendant's dual convictions of aggravated burglary and theft arose from the same act or transaction because "the offenses occurred against the same victim, at the same location, in close temporal proximity, and as part of one continuing criminal transaction." 476 S.W.3d 382, 400–01 (Tenn. Crim. App. 2013).

Of particular interest in this case is the separate concurring opinion filed with the Court of Criminal Appeals' majority opinion in Barney. See State v. Barney, No. 01C01-9509-CR-00317, 1997 WL 409515, at *10–12 (Tenn. Crim. App. July 23, 1997) (Hayes, J., concurring), aff'd 986 S.W.2d 545 (Tenn. 1999). The majority of the intermediate court utilized the Anthony due process analysis. Id. at *4–6. Judge Hayes disagreed with this approach, stating that the issue before the court "implicates principles of double jeopardy." Id. at *10 (Hayes, J., concurring). Judge Hayes posited the question as "whether the appellant's conduct constitutes, as he claims, only one crime which stems from an indivisible course of conduct, i.e. rape of a child or, as the State claims, two separate and distinct offenses of aggravated sexual battery and rape." Id. As set forth above, the facts adduced at trial established that, for each of the five pairs of convictions contested by the defendant, the defendant had first manually rubbed the victim's penis and then fellated the victim. The rubbings formed the basis of the aggravated sexual battery convictions, and the fellatios formed the basis of the rape of a child convictions. Judge Hayes focused on "whether the touching of the victim's penis was a necessary act for the completion of the rape or whether the touching was an act discrete and separate from the subsequent rape." Id. at *11. Judge Hayes acknowledged that, "in cases involving sex offenses, determining whether the act was 'preparatory' or 'facilitatory' is not easily ascertained," noting that "there is little uniformity on this subject." Id. Judge

Hayes continued:

> If the contact was clearly not a part of the rape, but a part of a separate course of conduct, it can be held a separate offense. See People v. Slobodion, 31 Cal. 2d 555, 191 P.2d 1, 5 (Cal. 1948).
>
> Furthermore, a distinction exists between sexual contact designed to arouse and that contact solely intended to facilitate the rape. Contact intended to arouse is capable of producing its own attendant fear, humiliation, pain and damage to the victim.

Id. (citing State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996)). Noting that "[t]he proof in the record establishe[d] that the appellant harbored multiple criminal objectives of aggravated sexual battery and rape and that the sexual contact was not simply prepatory [sic] to the rape," Judge Hayes concluded that "[i]t was unnecessary for the appellant to masturbate the victim in order for him to accomplish the act of fellatio. Thus, the appellant's conduct of rubbing up and down constitutes a separate and distinct act from that of rape." Id. at *11, 12 (internal quotation marks omitted). Accordingly, Judge Hayes "would affirm the appellant's five convictions for aggravated sexual battery." Id. at *12.

Moreover, although we have today overruled this Court's decision in Barney to the extent that it utilized a due process analysis to address the issue before it, we recognize that, after Watkins, Barney would be characterized as a multiple description case.[9] To that extent, the five factors listed in Barney as "relevant in determining whether conduct is directly facilitative, and thus incidental [to a sexual assault], or merely preparatory in the sense of intending to arouse the victim or perpetrator [and therefore independently significant]," 986 S.W.2d at 548, are helpful in our quest to elucidate the methodology for determining whether a defendant's conduct in a multiple description case arises from "the same act or transaction."

We also have found some guidance on what constitutes "the same act or transaction" from other jurisdictions. For instance, the Kansas Supreme Court has stated that this threshold inquiry "indicates the conduct must be unitary," State v. Schoonover, 133 P.3d 48, 62 (Kan. 2006), and offered four factors to be considered in determining if the accused's conduct was "unitary":

> (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

---

[9] Watkins revised significantly the framework that Tennessee courts use to resolve double jeopardy issues.

Id. at 79. Alabama's Court of Criminal Appeals also has cited favorably these four factors for determining whether a defendant's conduct that allegedly violated more than one statute arises from the same act or transaction. See Williams v. State, 104 So. 3d 254, 262 (Ala. Crim. App. 2012) (citing Schoonover, 133 P.3d at 79).

In contrast, the Alaska Court of Appeals has stated that "[i]t is a well-settled rule that an act of sexual touching and an act of sexual penetration will not constitute separate crimes if they occur on a single occasion and the touching is merely preliminary to the penetration." Harvey v. State, No. A-5814, 1996 WL 658501, at *7 (Alaska Ct. App. Nov. 13, 1996) (mem. op. & j.) (citing Johnson v. State, 762 P.2d 493, 495 (Alaska App. 1988)). Similarly, the Florida Supreme Court held in State v. Drawdy that the defendant's dual convictions of (1) sexual battery for penetrating the victim's vagina with his penis and (2) lewd molestation for touching her breasts during the penetration withstood a double jeopardy challenge because "touching the victim's breasts was not incidental to the vaginal penetration—as grabbing the victim's buttocks to facilitate the sex act, for example, might be." 136 So. 3d 1209, 1214 (Fla. 2014).

In Spain v. United States, 665 A.2d 658 (D. C. Ct. App. 1995), the District of Columbia Court of Appeals considered a case in which the defendant had been convicted of (1) assault with intent to commit carnal knowledge and (2) taking indecent liberties with a minor child, a lesser-included offense of assault with intent to commit carnal knowledge. The defendant contended that the two offenses should be merged on the basis that the second conviction was a lesser-included offense of the first. Id. at 659, 660. The proof established that the defendant had first fondled the victim's genital area while she was lying on the bed next to the defendant. After the victim got up and left the bed, the defendant convinced her to return and lie down next to him. The defendant then placed his penis between the victim's legs and began moving his body back and forth. The court recognized the rule that a greater and lesser offense will merge when they "both stem from a single criminal act," but that, "[w]hen the two offenses 'are triggered by separate acts, merger is precluded.'" Id. at 660 (quoting Norris v. United States, 585 A.2d 1372, 1375 (D.C. 1991)). The court held that the two convictions did not merge based on the "fork in the road" test:

> "If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not."

Id. (quoting Irby v. United States, 390 F.2d 432, 437–38 (D.C. App. 1967) (en banc) (Leventhal, J., concurring)). Noting that "[t]his test originated in the venerable Supreme Court decision in Blockburger," the court stated that "the question we must answer in the present case is whether there was 'evidence to show that [appellant] reached a decision point, a "fork in the road" leading to a "new impulse," resulting in a different offense.'"

Id. (quoting Norris v. United States, 585 A.2d 1372, 1375 (D.C. 1991)). The court concluded that the defendant had formed a second, distinct impulse:

> Appellant's initial impulse was to pull [the victim's] pants down and fondle her genitalia. At that point, according to the evidence, he showed no interest in having intercourse with her. Had he stopped the "game" when [the victim] got off the bed and said she "didn't want to play any more," his criminal liability would have ended there. The brief interval that followed gave appellant a moment to decide "whether to retreat or to invade another interest." Owens v. United States, 497 A.2d 1086, 1096 (D.C. 1985). Instead of "retreating" or discontinuing his actions, however, he lured [the victim] back to the bed by saying that he wanted to tell her something. Thus we hold that what happened thereafter was "the product of a new criminal impulse . . . punishable separately from the earlier act . . . ." Allen v. United States, 580 A.2d 653, 658 (D.C. 1990).

Id. at 661 (short citations modified to full citations).

In Williams, supra, the Alabama court recognized that the analysis utilized in unit-of-prosecution cases could still be instructive in multiple description cases on the issue of determining whether a defendant's conduct arises out of the same act or transaction. Williams, 104 So. 3d at 261–62 (citing Townsend v. State, 823 So. 2d 717, 721–24 (Ala. Crim. App. 2001), a unit-of-prosecution case). The New Mexico Supreme Court also has recognized that unit-of-prosecution cases can be of assistance in offering guidance to the difficult task of determining whether, in a multiple description case, a defendant's conduct arose out of the same act or transaction. See Swafford, 810 P.2d at 1234 (citing Herron v. State, 805 P.2d 624 (N.M. 1991), a unit-of-prosecution case). Accordingly, we deem it appropriate to consider guidance offered in unit-of-prosecution cases for assistance in formulating a calculus for answering the "same act or transaction" inquiry in multiple description cases.

As Watkins explains, a unit-of-prosecution case involves multiple violations of the *same* statute as opposed to violations of two or more different statutes. Unit-of-prosecution cases require a determination of "'what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment.'" Watkins, 362 S.W.3d at 543 (quoting Thomas, 47 U. Pitt. L. Rev. at 11). "Where two violations of the same statute rather than two violations of different statutes are charged, courts determine whether a single offense is involved not by applying the Blockburger test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." United States v. Weathers, 186 F.3d 948, 952 (D.C. Cir. 1999) (citing Sanabria v. United States, 437 U.S. 54, 70 n.24 (1978)). Although the inquiry required under unit-of-prosecution cases is somewhat different than that required for multiple description cases, we agree with the Alabama and New Mexico courts that reference to such cases is helpful

12

to a determination of whether a defendant accused of violating two different sexual assault statutes committed only a single act or transaction.

With this in mind, we now turn to an examination of State v. Phillips, 924 S.W.2d 662 (Tenn. 1996). In Phillips, this Court addressed a case in which the defendant argued that his three convictions of aggravated rape all arose from a single episode and, therefore, he committed only a single offense. Thus, Phillips is a unit-of-prosecution case. The proof at trial established that, over the course of approximately three hours, the defendant penetrated the sole victim's vagina with a plastic object, his mouth, and his penis. All of these penetrations occurred in the victim's bed. This Court held that the defendant's three convictions did not offend double jeopardy because each of the defendant's sexual assaults upon the victim "required a different body position and engaged different body parts. . . . Therefore, each penetration constituted a distinct, unlawful invasion of the victim's body." Id. at 665. The Phillips Court set forth the following factors as "significant" in addressing questions of whether a particular sexual assault constitutes a single violation or multiple violations of a sexual assault statute:

1. The nature of the act;

2. The area of the victim's body invaded by the sexually assaultive behavior;

3. The time elapsed between the discrete conduct; [and]

4. The accused's intent, in the sense that the lapse of time may indicate a newly formed intent to again seek sexual gratification or inflict abuse[.]

Id.[10] The Phillips Court cautioned that "the presence and absence of any one factor or a combination of them other than the nature of the act is not determinative of the issue." Id.

Our Court of Criminal Appeals also has addressed the issue of multiple convictions of a particular sexual offense when committed against the same victim. For instance, in Lillard v. State, 528 S.W.2d 207 (Tenn. Crim. App. 1975), the defendant was convicted of "two separate rapes committed upon the same victim upon the same night." Id. at 209. Upholding the two convictions against a sufficiency challenge, our intermediate appellate court stated the following:

But we do not agree that a man who has raped a woman once may again assault and ravish her with impunity, at another time and at another place, as was done here. An intent was formed to rape her again. The

---

[10] The Phillips Court listed cumulative punishment as a fifth factor. Phillips, 924 S.W.2d at 665. However, the United States Supreme Court has made clear that two convictions for the "same offense" may violate double jeopardy even if the resulting sentences are ordered to be served concurrently. See Rutledge v. United States, 517 U.S. 292, 302–03 (1996). Accordingly, we do not consider this factor.

13

evidence of the second rape is entirely additional to that of the first. Additional orders were given to the captive female, an intent to have her again was formed and manifested, and the crime committed. Certainly there was separate and additional fear, humiliation and danger to the victim.

Id. at 211. The court concluded: "We hold that separate acts of rape, committed at different times and places and the product of several intents, are severally punishable." Id.

In contrast, the Court of Criminal Appeals merged two counts of aggravated rape in State v. Arnett on the following basis:

The conduct at issue involves two acts of vaginal sexual penetration, i.e., one digital and one penile. The testimony of the victim relating to the separate counts provides, "he tried to put his penis inside of me, but he couldn't get it in. So he used his finger, and then he tried again and put his penis inside of me then." Clearly, the penetrations invaded the same body area of the victim, with only seconds elapsing between the two penetrations. Obviously, from the victim's testimony, the digital penetration was merely the means of completing the penile penetration. We are unable to conclude that the intervening seconds between the penetrations provided a sufficient lapse of time so as to permit the development of "a newly formed intent" as the digital penetration only served to facilitate the penile penetration. Phillips, 924 S.W.2d at 665. Accordingly, we find that the two vaginal penetrations of Smith were not separate and distinct offenses. As such, the appellant's convictions and sentences for aggravated rape violate protections against double jeopardy.

No. 03C01-9811-CR-00395, 2000 WL 122222, at *7 (Tenn. Crim. App. Feb. 2, 2000) (citation omitted), aff'd 49 S.W.3d 250 (Tenn. 2001).

Other jurisdictions also utilize these or similar factors in a determination of whether, in a unit-of-prosecution case, multiple convictions of a sexual offense withstand a double jeopardy challenge. For instance, in Harrell v. State, 277 N.W.2d 462, 464 (Wis. Ct. App. 1979), the Wisconsin Court of Appeals considered a case in which the defendant had been convicted of two counts of rape. The two rapes involved the same victim, involved the same type of penetration, and occurred in the same location, but were separated by twenty to twenty-five minutes. Id. Recognizing that the relevant statutes did not identify the "allowable unit of prosecution," id., and after extensive review of multiple cases from multiple jurisdictions, the court adopted the rationale of Lillard, supra, id. at 471, and determined that the defendant's two convictions of rape did not violate double jeopardy, id. at 468. The court concluded that several factors were "dispositive aids to whether an episode of sexually assaultive behavior constitutes a single offense or multiple offenses." Id. at 472. Those factors include (1) the nature of the act(s), including a consideration of "whether the proscribed conduct with reference to

14

one charge is distinguishable from the proscribed conduct with reference to the other charge"; (2) the interval of time between the offenses, including the recognition that "[t]he greater the interval of time between acts constituting an episode of sexually assaultive behavior, the greater the likelihood of separate offenses"; (3) the place(s) of the assault, "involv[ing] the dual concepts of the location where the assault occurs, as well as the intimate parts of the victim's body invaded," with different places of either sort increasing the likelihood of an additional offense; (4) "[t]he defendant's intent, as evidenced by his conduct and utterances, to sexually abuse or obtain sexual gratification from his victim [which] may demonstrate his desire for differing and separate means or acts of abuse or gratification"; and (5) the number of victims. Id. at 473, 474. The court emphasized that "[t]he presence and absence of a single factor or a combination of factors other than the nature of the act is not conclusive of the issue." Id. at 473.

In Herron v. State, 805 P.2d 624 (N.M. 1991), after extensive research, the New Mexico high court formulated several factors that were of assistance in determining the validity of multiple convictions of rape:

> (1) temporal proximity of penetrations (the greater the interval between acts the greater the likelihood of separate offenses);
>
> (2) location of the victim during each penetration (movement or repositioning of the victim between penetrations tends to show separate offenses);
>
> (3) existence of an intervening event;
>
> (4) sequencing of penetrations (serial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses); [and]
>
> (5) defendant's intent as evidence by his conduct and utterances[.]

Id. at 628 (citing Johnson v. Alaska, 762 P.2d 493, 495 (Alaska Ct. App. 1988); State v. Griffin, 713 P.2d 283, 287 (Ariz. Ct. App. 1986); Tarry v. State, 710 S.W.2d 202, 203 (Ark. 1986); People v. Rodarte, 547 N.E.2d 1256, 1261–62 (Ill. App. Ct. 1989); State v. Hamilton, 791 S.W.2d 789, 795 (Mo. Ct. App. 1990); Lillard, 528 S.W.2d at 211; State v. Lomargo, 335 N.W.2d 583, 592 n.6 (Wis. 1983); Hamill v. State, 602 P.2d 1212, 1216 (Wyo. 1979)).

The Colorado Supreme Court also has undertaken this analysis in a case involving a defendant convicted of three counts of sexual assault on a child. Quintano v. People, 105 P.3d 585, 587 (Colo. 2005) (en banc). Seeking guidance from other jurisdictions, the Court noted that "[c]ourts commonly hold that incidents of sexual assault may be factually distinct if separate criminal acts have occurred at different times and were separated by intervening events." Id. at 591 (citing Gray v. United States, 544 A.2d

1255, 1258 (D.C. 1988), Vaughan v. State, 614 S.W.2d 718, 722 (Mo. Ct. App. 1981)). The Colorado Supreme Court noted that the defendant's intent also was commonly relied upon, including a consideration of "whether there was any evidence that [the defendant] reached a fork in the road, leading to a fresh impulse which resulted in a separate offense." Id. (quoting Sanchez-Rengifo v. United States, 815 A.2d 351, 359 (D.C. 2002) (internal quotation marks omitted)). The court also noted the factors set forth in Herron and determined that, "[t]hough the cases do not form a consensus on the length of time required between acts, all jurisdictions appear to require either that the defendant's acts of sexual perpetration not be so close in time, or be so lacking in intervals, that they constitute a single offense of sexual contact." Id. at 591.

While the Colorado Supreme Court declined to adopt "any specific list of factors to determine whether the defendant's acts constitute factually distinct offenses," the court determined that all three of the defendant's convictions withstood a double jeopardy challenge:

> The record evidences that the defendant had sufficient time to reflect after each encounter. He persisted after the victim admonished him to stop several times. Each incident occurred in a different location, or after the victim had left a location and returned there. As well, the record reflects sufficient breaks between each incident to allow the defendant time to reflect. Moreover, the defendant's statements supported the forming of renewed intentions. Though the record does not disclose specifically how long each incident lasted, the facts prove that the defendant's conduct was separate in temporal proximity and constituted a new volitional departure in his course of conduct.

Id. at 592; see also, e.g., Velez v. Clarinda Corr. Facility, 791 F.3d 831, 835 (8th Cir. 2015) (in unit-of-prosecution cases, relevant factors applied by Iowa courts in double jeopardy inquiry are "the time interval between the successive actions; the place where the actions occurred; the identity of the victim(s); the existence of an intervening act; the similarity of the defendant's acts; and the defendant's intent at the time of his actions") (citing State v. Ross, 845 N.W.2d 692, 705 (Iowa 2014)); Stoddard v. Secretary, Dep't of Corr., 600 Fed. Appx. 696, 704–05 (11th Cir. 2015) (recognizing that, in determining whether multiple convictions of sexual battery violate double jeopardy, Florida courts would look to the "spatial and temporal aspects of the criminal conduct," the number of victims, and whether "'the defendant had time to pause, reflect, and form a new criminal intent between the occurrences'") (quoting Eaddy v. State, 789 So. 2d 1093, 1095 (Fla. Dist. Ct. App. 2001), other citations omitted); State v. Griffin, 713 P.2d 283, 287 (Ariz. 1986) (en banc) (affirming four counts of sexual assault involving same victim because "[e]ach felonious act was performed independent of the others and was completed prior to the beginning of the next act. Each act was performed in an entirely different manner and each was accompanied by the use of force and a lack of consent on the victim's part. It is irrelevant that the acts were committed within a relatively short time span") (citations

16

omitted); Tarry v. State, 710 S.W.2d 202, 203 (Ark. 1986) (affirming two rape convictions involving same victim because "the two acts of rape were of a different nature and were separated in point of time. A separate impulse was necessary for the commission of each offense"); Vaughan v. State, 614 S.W.2d 718, 722 (Mo. Ct. App. 1981) (upholding two rape convictions against double jeopardy challenge, noting that, "[w]hether multiple assaults resulting in rape constitute multiple crimes or a single crime are determined by the facts of each case, including the factors of time, place of commission and, preeminently, defendant's intent, as evidenced by his conduct and utterances") (citations omitted); State v. Eisch, 291 N.W.2d 800, 806 (Wis. 1980) (multiple charges of rape proper where defendant alleged to have committed vaginal intercourse, anal intercourse, fellatio, and inserting object into victim's genitals because each alleged act "was perpetrated by the exercise of separate volitional acts, each involved a different area of the victim's body, each required separate application of force and threat, and each resulted in a new and different humiliation, danger and pain"); Hamill v. State, 602 P.2d 1212, 1216 (Wyo. 1979) (rejecting double jeopardy challenge to three convictions of rape on basis that, "where separate and distinct incidents of sexual assault occur in different ways, each in a different time period or where the same type of sexual assault occurs more than once on the same victim in different time periods, each incident constitutes a separate definable criminal offense which can be prosecuted individually") (citations omitted).

The courts of Texas have framed the issue somewhat differently, but, nevertheless, their cases offer some guidance. For instance, in Maldonado v. State, the Texas Court of Criminal Appeals recognized that sexual penetration "cannot physically occur in the absence of contact" and that "[a]n offense may be factually subsumed when there is a single act that cannot physically occur in the absence of another act." 461 S.W.3d 144, 149 (Tex. Crim. App. 2015). In that event, "it would violate the Double Jeopardy Clause to punish the defendant more than once for the same conduct." Id.; see also Aekins v. State, 447 S.W.3d 270, 275, 277 n.28 (Tex. Crim. App. 2014) (stating that, "[i]f the offense is a single *continuous* act, with a single impulse, in which several different statutory provisions are necessarily violated along that continuum, the offenses merge together," and providing as an example, "one rape will frequently involve the defendant's acts of exposing his genitals, then contacting the victim's genitals with his own, then penetrating the victim's genitals with his. It is a 'continuing' crime in the sense that the defendant commits several criminal acts on the way to completing the rape, but the lesser acts of exposure and contact merge into the ultimate act of penetration") (citing Patterson v. State, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004)); Alberts v. State, 302 S.W.3d 495, 502–03 (Tex. App. 2009) ("[A] defendant cannot be convicted for a completed act of sexual assault and also for conduct that is demonstrably a part of the commission of the completed act.") (citation omitted).

Clearly, based upon our review of these many cases from many jurisdictions, there is no well-accepted, "bright-line" test for the determination of whether a particular defendant has committed one or more sexual offenses during the course of a single sexual

17

assault on a single victim, regardless of whether the acts are categorized as violating one statute more than once or as violating more than one statute. In light of the above guidance, however, we offer the following list of non-exclusive factors that may be taken into consideration when, in a multiple description case involving a single victim, the defendant claims that his multiple convictions arise from the same act or transaction:

1. The nature of the defendant's actions that are alleged to be in violation of the various statutes ("the defendant's actions");

2. The temporal proximity between the defendant's actions;

3. The spatial proximity of the physical locations in which the defendant's actions took place;

4. Whether the defendant's actions contacted different intimate areas of the victim's body and the degree of proximity of those areas to each other;

5. Whether the defendant's contact with different intimate areas of the victim's body was deliberate or merely incidental to facilitating contact with another intimate area;

6. Whether the defendant deliberately used different parts of his body (or objects) to assault the victim sexually;

7. Whether the defendant's assault was interrupted by some event, giving him an opportunity to either cease his assault or re-form a subsequent intent to commit a subsequent assault;

8. Indications of the defendant's intent to commit one or more than one sexual assault on the victim; and

9. The extent to which any of the defendant's actions were merely ancillary to, prefatory to, or congruent with, any of his other actions, thereby indicating unitary conduct.

The presence or absence of any one or more particular factors is not determinative.

We turn now to the application of these factors to the facts and circumstances of this case.

*Application of the Factors*

The proof in this case established that the Defendant's sexual contact with the victim occurred while they were both lying down and the Defendant was positioned behind the victim. The Defendant began his assault by pulling down the victim's pants. At that point, the victim felt something on her back, which she assumed was the Defendant's penis. The victim next felt the Defendant's penis between her thighs and

18

outside of her rectum. This proof supports the inference that the Defendant manipulated his penis from contact with the victim's back to being situated between her legs, from behind. This particular positioning also included contact between the Defendant's penis and the victim's buttocks. The victim testified that, after the Defendant put his penis between her legs from behind, he moved his body up and down, causing his penis to rub between her legs and against the outside of her buttocks, including, at least on one occasion, a "little bit" of penetration into her genital area. Eventually, he ejaculated. The victim then got up, and both she and the Defendant left the room.

The proof does not establish that there was either a pause in time or a change in location between the touching of the victim's buttocks with the Defendant's penis and the penetration of the victim's genital area with the Defendant's penis. That is, the contact between the Defendant's penis and the victim's buttocks and genitals occurred simultaneously and with no change in position by either the Defendant or the victim. There was no interruption between the physical contacts.

Taking these factors into consideration in light of the proof in this case, we hold that the Defendant's conduct during the Lemonade Mouth movie constituted a single, continuous episode of sexual assault, during which his penis rubbed against the victim's buttocks coincidentally to, and as a part of, rubbing between the victim's legs and penetrating the victim's genital area. We emphasize that our analysis focuses, as it must, on the physiological aspects of the Defendant's sexual assault on the victim as their bodies were positioned at the time of the contact. The proof demonstrates that the Defendant's touching of the victim's buttocks with his penis was not an act independent of his rape of her genital area, but, rather, was merely incidental to the genital penetration. Accordingly, we must conclude that the Defendant's conviction of attempt to commit aggravated sexual battery and his conviction of rape of a child arose out of the same act or transaction.

Under Watkins, if our determination of the threshold inquiry is that the Defendant's two convictions arose from the same act or transaction, we next must consider the statutory elements of the two conviction offenses. Watkins, 362 S.W.3d at 557. "If the elements of the offenses are the same, *or one offense is a lesser included of the other*, then we will presume that multiple convictions are not intended by the General Assembly and that multiple convictions violate double jeopardy." Id. (emphasis added). This Court already has determined that aggravated sexual battery is a lesser-included offense of rape of a child. State v. Howard, 504 S.W.3d 260, 273 (Tenn. 2016). Because the attempt to commit a crime is a lesser-included offense of the completed crime, State v. Burns, 6 S.W.3d 453, 466–67 (Tenn. 1999), attempt to commit aggravated sexual battery is also a lesser-included offense of rape of a child. Accordingly, we are constrained to conclude that the Defendant's dual convictions of attempt to commit aggravated sexual battery and rape of a child arising out of his assault on the victim while she watched Lemonade Mouth violate double jeopardy.

19

The appropriate remedy for this double jeopardy violation is the merger of the lesser offense into the greater offense. See, e.g., State v. Davidson, 509 S.W.3d 156, 217 (Tenn. 2016) (stating that "[m]erger is required when a jury returns guilty verdicts on two offenses, one of which is a lesser-included offense of the other") (citation omitted). Therefore, we hold that the Court of Criminal Appeals did not err by ordering the merger of these two convictions, although we affirm the order of merger for reasons different than those relied upon by the intermediate appellate court.

## Conclusion

Although we have utilized a different analysis, we affirm the judgment of the Court of Criminal Appeals that the Defendant's conviction of attempt to commit aggravated sexual battery, entered on Count One of the indictment, must be merged into the Defendant's conviction of rape of a child, entered on Count Three of the indictment. We remand this matter to the trial court for the entry of the appropriate judgment documents reflecting this merger.[11]

In addition to remanding this matter to the trial court for the entry of corrected judgment orders reflecting the Defendant's modified sentences, the Court of Criminal Appeals remanded this matter to the trial court for the correction of clerical errors relative to the judgment order entered on Count Six. We affirm these orders of remand.

In sum, we affirm the judgment of the Court of Criminal Appeals.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

---

[11] The Court of Criminal Appeals also determined that the trial court erred in sentencing the Defendant and modified the Defendant's sentences accordingly. The State did not appeal from the Court of Criminal Appeals' judgment regarding the Defendant's sentences. Accordingly, although a remand for a reconsideration of consecutive service might have been appropriate in light of the intermediate appellate court's modification of the Defendant's sentences, the State has not appealed this issue.