FILED

01/16/2019

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 6, 2018 Session

**STATE OF TENNESSEE v. MARTINOS DERRING**

**Appeal from the Criminal Court for Shelby County**
**No. 14-05922          Lee V. Coffee, Judge**

_____

**No. W2017-02290-CCA-R3-CD**

_____

Defendant, Martinos Derring, was convicted by a jury of robbery, theft, felony evading arrest, and evading arrest. The trial court sentenced Defendant to a total effective sentence of fourteen years, eleven months, and twenty-nine days. Defendant appealed, asserting various challenges to his convictions and effective sentence. On appeal, we determine that the trial court should have merged Defendant's convictions for robbery and theft and committed a clerical error by marking the box rendering Defendant infamous for misdemeanor evading arrest. For those reasons, we reverse and remand to the trial court for entry of amended judgment forms. In all other respects, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed
in Part, Reversed in Part, and Remanded.**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Stephen Bush, District Public Defender; Phyllis Aluko (on appeal) and Sam Christian (at trial), Assistant District Public Defenders, for the appellant, Martinos Derring.

Herbert H. Slatery III, Attorney General and Reporter; Johnathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 16, 2014, Martha Sneed, the victim, worked her normal second shift at KIK Custom Products in Memphis. She got off work around midnight and decided to

stop at Walgreens to rent a movie from the Redbox located outside the store. She parked her 2002 burgundy Nissan Maxima, walked up to the Redbox, and opened the Redbox application on her phone to see if she had a code for a free movie. As she was "standing there, [she] heard this little click" behind her. She did not turn around immediately but heard a voice say, "Give me your keys." When she turned around, she saw a "young man standing there in front of [her] with a gun, demanding the keys to [her] car." She was shocked. The victim described the man as black, around "five-six, five-eight in height." She noticed that he was wearing a dark shirt and had a bandana across his face. The victim had a set of keys in her pocket and another set of keys inside her purse on the seat of the car. She told the man that the keys were in the car. The man walked to the car and did not see the keys, so he walked back over to her and again demanded the keys. She gave him the set of keys that were in her pocket. The victim begged the man for her purse and told him that there was no money in it. The man "pointed the gun out of the window and just drove off."

The victim called the police. She went to the police station several hours after the event and gave a statement to police. In the statement, she estimated the perpetrator to weigh between one hundred ten to one hundred twenty pounds. She was unable to positively identify the man in a photographic lineup because his face had been covered. Surveillance video from Walgreens captured the encounter, but the quality of the video was characterized as poor. The video was entered into evidence and viewed by the jury.

Officer Parker Culver of the Memphis Police Department responded to the call about the robbery. When he arrived at Walgreens, he took a report for "robbery and carjacking" of the victim's car. He immediately reported the description of the vehicle to police in order to get the information out "as quick as possible."

Officer Christopher Winsett of the Memphis Police Department was on the nighttime task force on the night of the incident. He heard the broadcast come over the radio with a description of the vehicle. He was on duty in a precinct located south of the location where the car theft occurred. Officer Winsett explained that he "like[d] to catch people" and "anticipated that the car would come back to [his] area," so he drove to the "Crump exit" on "northbound 55." After sitting in his patrol car on the right-hand side of the road for about five to ten minutes, he saw a maroon Nissan Maxima drive by. He followed the car but did not immediately turn on his blue lights "for officer safety and for the safety of the suspect." Officer Winsett did not see the suspect throw anything out of the car. He used his radio to determine if there were other officers in the area and to confirm that he was indeed pursuing the car that had been stolen from the victim. He followed the car through several intersections before finally turning on his lights and sirens at the intersection of Mississippi Boulevard, "Lauderdale," and "Georgia." Officer Winsett observed the car "accelerate as fast as the car could go." The car travelled for about three or four hundred yards before it "disregarded the stop light at Mississippi and

Danny Thomas" and "T-boned" another car. The other car, a Buick LeSabre, was hit on the passenger side and "continued through the iron gate fence there of the Foote Homes apartment complex, and crashed into one of the buildings there." The stolen Nissan ended up in the middle of the intersection. Officer Winsett stopped his patrol car and "jumped out immediately." The suspect got out of the Nissan and started running. Officer Winsett gave chase. The suspect took off, jumping the fence at Foote Homes. Officer Winsett was not able to jump the fence so he "ran back probably to thirty feet, back to an opening in the fence, a doorway or opening" before chasing the suspect into the complex. Officer Winsett was able to give out a broadcast of the suspect's description. Officer Winsett lost sight of the suspect and decided to head back toward the intersection when he "heard over the radio that one of the other officers had caught him" on "Danny Thomas," just south of "Vance." When Officer Winsett reached the location where the suspect was apprehended he confirmed "[a] hundred percent" that it was the same person he saw get out of the Nissan. Officer Winsett identified Defendant as the person that was arrested.

Lieutenant Brian Rickett heard the broadcast about the robbery and vehicle theft. Lieutenant Rickett took note of the vehicle description and pulled into a parking lot on "Crump." Several minutes later he saw the Nissan Maxima going "eastbound up Crump." When Lieutenant Rickett started to pull out of the parking lot, he noticed that the car was already being followed by a Memphis police officer. Lieutenant Rickett fell in behind the other police car. The two officers followed the car "down the street a little ways past Danny Thomas." As they approached the intersection of "Mississippi" and "Crump," Lieutenant Rickett heard the other officer give the tag number to dispatch over the radio to learn whether the car was the stolen Nissan Maxima. At a "series of intersections" near "South Lauderdale right there where it intersects Booker T. Washington School," the officer in front "tried to initiate a traffic stop when [they] were approaching the stop sign." As soon at the blue lights were activated, Lieutenant Rickett observed the car take off at a "high rate of speed" before running a red light and hitting a vehicle at the intersection of "Mississippi" and "Danny Thomas." Lieutenant Rickett stopped his vehicle about twenty-two feet away from the car and observed Defendant "frantically trying to get out of the car." Defendant turned and looked at Lieutenant Rickett before starting to run. Lieutenant Rickett followed Defendant in his car until Defendant jumped the fence. At that point, Lieutenant Rickett lost sight of Defendant but was able to notify other officers by radio of the direction in which Defendant was heading. Two to three minutes later, Lieutenant Rickett heard a broadcast that Defendant was in custody. When he arrived at the location where Defendant was arrested, Lieutenant Rickett was 100% certain that Defendant was the person he saw "bail out of the car after it was wrecked."

Officer James Walton was on duty for the Memphis Police Department in the early morning hours and heard the broadcast related to the robbery and carjacking. He

received information that several officers were in pursuit of a car, that there was a wreck, and that a suspect was running on foot.  Officer Walton was nearby, so he headed south on Danny Thomas to assist in the search.  As he approached the apartment complex, someone on the radio commented, "You passed him."  There was a squad car immediately in front of Officer Walton, and he was not sure to whom the person on the radio was addressing.  Officer Walton "hit the brakes," and "a person ran into the side of [his] squad car" between the front passenger door and the front tire from the direction of Foote Homes.  It was the Defendant.  Defendant was in handcuffs even before Officer Walton could get out of his car.

Defendant was ultimately indicted by the Shelby County Grand Jury for aggravated robbery in Count One, theft of property valued over $1000 in Count Two, felony evading arrest in a motor vehicle in Count Three, and misdemeanor evading arrest in Count Four.  At trial, the victim explained that she had owned the car for about two and a half years at the time it was stolen.  She paid $13,000 for the car when she bought it and had just paid off the car.  The insurance company classified the car as totaled.  According to the victim, the car was worth $5000, but she only received $4000 from her insurance company because of her $1000 deductible.

Defendant did not present any proof at trial.  After hearing the State's proof, the jury found Defendant guilty of the lesser included offense of robbery in Count One, theft of property valued at $1000 or more in Count Two, felony evading arrest Count Three, and misdemeanor evading arrest in Count Four.  After a sentencing hearing, the trial court sentenced Defendant to six years for the conviction for robbery, four years for the conviction for theft of property, four years for the conviction for felony evading arrest, and eleven months and twenty-nine days for the conviction for misdemeanor evading arrest.  The trial court ordered the sentences to run consecutively, for a total effective sentence of fourteen years, eleven months, and twenty-nine days.

Defendant filed a motion for new trial in which he argued that the trial court erred in refusing to grant the motion for judgment of acquittal and that the guilty verdict was "against the weight and sufficiency of the evidence," specifically with respect to the charge of theft of property.  The trial court denied the motion, and Defendant appealed.  On appeal, Defendant argues that his convictions violate double jeopardy because they "arise from the same episodes of car theft and fleeing from law enforcement;" that the evidence was insufficient to support his convictions; that the State failed to prove "venue and territorial jurisdiction;" and that the trial court imposed an excessive sentence in contravention of the Sentencing Act.

*Analysis*

*I. Venue*

Defendant argues that the State failed to prove venue or territorial jurisdiction. The State counters that the issue was "never raised at trial and can be reviewed only for plain error." The State insists that Defendant may have waived the issue for tactical reasons and is not entitled to relief.

Venue can be waived in certain limited circumstances, including situations where a defendant consents to a trial in a different jurisdiction or where a defendant requests a change of venue. *See, e.g.*, *State v. Nichols*, 877 S.W.2d 722, 727-29 (Tenn. 1994); *State v. Smith*, 906 S.W.2d 6, 9 (Tenn. Crim. App. 1995). However, a defendant does not waive venue "by going to trial on the merits of the case." *Clariday v. State*, 552 S.W.2d 759, 770 (Tenn. Crim. App. 1976). An objection to jurisdiction "shall be noticed the court at any time during the pendency of the proceedings." Tenn. R. Crim. P. 12(b)(2). Thus, a defendant is not required to raise the issue of venue prior to trial. *Id.* Moreover, a defendant is not even required to raise the issue of venue in the motion for new trial to preserve the issue for appeal because "a successful appeal of an issue concerning venue would result in the dismissal of the prosecution." *State v. Anderson*, 985 S.W.2d 9, 15 (Tenn. Crim. App. 1997) (citing Tenn. R. App. P. 3(e) and 36(a)). We disagree with the State's assertion that Defendant has waived the issue in the absence of plain error.

"It is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction." *State v. Legg*, 9 S.W.3d 111, 114 (Tenn. 1999). "[T]erritorial jurisdiction, which recognizes the power of a state to punish criminal conduct occurring within its borders, is embodied in the constitutional right to a trial 'by an impartial jury of the county in which the crime shall have been committed.'" *Id.* (citing Tenn. Const. art. I; U.S. Const. amend. VI). In general, criminal offenses are prosecuted "in the county where the offense was committed." Tenn. R. Crim. P. 18(a). Venue has to be shown only by a preponderance of the evidence and can be established by the introduction of direct evidence, circumstantial evidence, or both. *State v. Smith*, 926 S.W.2d 267, 269 (Tenn. Crim. App. 1995). "[T]he jury is entitled to draw reasonable inferences from the evidence." *State v. Young*, 196 S.W.3d 85, 101-02 (Tenn. 2006).

Defendant argues that the State introduced the street address of the location of the robbery and names of the intersections where Defendant allegedly evaded arrest into evidence, but there was no proof that those locations were actually in Shelby County, Tennessee. He relies on *State v. Hutcherson*, 790 S.W.2d 532 (Tenn. 1990) to support his argument that the State failed to establish venue. In *Hutcherson*, the only evidence of venue was "that the mother of the victim called the Shelby County Sheriff's Office to report the crime and that office conducted an investigation." 790 S.W.2d at 534. The court noted that there was "not one scintilla of evidence . . . that the offense occurred in

any county other than Shelby" but that the evidence in that case did not prove venue. *Id.* at 535.

In this case, there was never any issue at trial with regard to the location of the commission of the crimes. The victim testified as to the location of the Redbox where Defendant first approached her and stole her car. The video of the encounter was played for the jury. All of the responding officers were employed by the Memphis Police Department or Memphis Housing Authority at the time of trial. They each gave testimony including street names as to the location of the police chase, the crash, and the foot chase that gave rise to Defendant's arrest. This court has previously interpreted Tennessee Rule of Evidence 201 to permit a jury, whether requested or not, to notice facts "generally known within the territorial jurisdiction of the trial court." *State v. Ellis*, 89 S.W.3d 584, 598 (Tenn. Crim. App. 2000). Officer Culver even testified that the Walgreens was located within his precinct, the "Airways precinct." Additionally, the proof indicated that there was a broadcast to all of the "officers in the city" about the incident. In our view, this was more than enough evidence to establish venue in Shelby County.

## II. Sufficiency of the Evidence

Defendant argues that the evidence is insufficient to support the convictions. Defendant mainly complains about the lack of proof establishing his identity. Specifically, Defendant insists that the State failed to prove that "he took anything from the person of the victim by use of force or violence," that no one actually identified him as the perpetrator of the robbery, that no physical evidence linked Defendant to the victim's car, and that the surveillance video showed someone wearing long pants while "evidence suggested that the person who later fled from her car wore shorts." Further, Defendant argues that his identity as the driver of the car "was not much stronger." The State, on the other hand, insists that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all

reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Identity is an essential element of every crime. *State v. Bell*, 480 S.W.3d 486, 517 (Tenn. 2015). The identification of the perpetrator of a crime is a question of fact for the jury. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). "The credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing *State v. Strickland*, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). In resolving questions of fact, such as the identity of the perpetrator, "the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses." *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)).

## A. Robbery and Theft

Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear, and theft is knowingly obtaining or exercising control over property without the owner's effective consent and with the intent to deprive the owner of property. T.C.A. § 39-13-401(a); T.C.A. § 39-14-103(a). The definition of "deprive" includes to "[w]ithhold property or cause it to be withheld for the purpose of restoring it only upon payment of a reward or other compensation." T.C.A. § 39-11-106(a)(8)(B). Theft is a lesser included offense of both robbery and aggravated robbery. *State v. Hayes*, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999). "The use of violence or fear elevates theft to robbery," and a taking becomes robbery rather than theft depending on whether and when fear or violence is introduced. *State v. Swift*, 308 S.W.3d 827, 830 (Tenn. 2010). Furthermore, it is the law in Tennessee that possession of recently stolen property, unless it is satisfactorily explained, creates a permissible inference that the person who possessed the stolen property gained possession through theft. *See State v. James*, 315 S.W.3d 440, 450 (Tenn. 2010).

Viewing the evidence in a light most favorable to the State, the proof showed that Defendant approached the victim from behind while she was attempting to rent a movie at the Redbox machine. The victim testified that she heard a clicking noise and saw a gun. She was scared. Defendant was wearing a "bandana across his face," and "dark-colored clothes." Defendant demanded the keys twice before she complied. Defendant drove away in her car, which was valued at $5000. The victim called police and gave a description of the perpetrator. When the victim viewed the videotape of the robbery at trial, she could not tell if Defendant was wearing pants or long shorts. Officer Culver, who took the description from the victim over the phone, thought he broadcast the description of Defendant's clothing as "a black shirt, black shorts, and a bandana around his mouth." When he viewed his report, however, it noted that the suspect was wearing "dark clothing." Two police officers saw Defendant driving the stolen car less than twenty-five minutes after it was reported stolen. When Defendant wrecked the car, he ran on foot from officers until he was eventually apprehended and arrested. Officer Winsett witnessed the crash. When Defendant took off on foot, Officer Winsett broadcast a description of Defendant "wearing a black shirt and shorts." When Defendant was taken into custody, he was wearing clothing similar those in the description given by the victim and several officers. Officer Winsett was "[a] hundred percent (100%)" certain that Defendant was the person who wrecked the car and ran on foot. Defendant disputes the validity of the eyewitness identifications by both the victim and the police officers involved in the chase and his arrest. This is essentially a challenge to the credibility of the witnesses, a task placed in the hands of the jury, and this Court will not substitute our own inferences on appeal. *See Pope*, 427 S.W.3d at 369; *Reid*, 91 S.W.3d at 277 (quoting *Bland*, 958 S.W.2d at 659). The evidence was sufficient to support Defendant's identity as well as the remaining elements necessary to support the convictions for robbery and theft.

### B. Felony Evading Arrest and Misdemeanor Evading Arrest

Defendant likewise challenges the evidence supporting his convictions for felony evading arrest and misdemeanor evading arrest. Again, he argues that there was not sufficient proof to establish his identity. The State, of course, disagrees.

Evading arrest can occur when a person "intentionally flee[s] or attempt[s] to elude any law enforcement officer" while "operating a motor vehicle on any street, road, alley, or highway," after "having received any signal from the officer to bring the vehicle to a stop." T.C.A. § 39-16-603(b)(1). When the "flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties," the offense is a Class D felony. T.C.A. § 39-16-603(b)(3)(B). Misdemeanor evading arrest occurs when a person "intentionally conceal[s] themselves or flee[s] by any means of locomotion from anyone the person knows to be a law

enforcement officer if the person: (A) Knows the officer is attempting to arrest the person." T.C.A. § 39-16-603(a)(1)(A).

The facts presented at trial showed that Defendant stole the victim's car. Shortly thereafter, he was spotted by an officer driving the car on the road. The officer started following Defendant and eventually turned on his blue lights to signal for Defendant to stop. Instead of stopping, Defendant accelerated, ran a stop sign and a stop light, and crashed into another car in the middle of an intersection. The crash forced the other car through a gate and into a building. Once the car crashed, Defendant ran on foot. He was pursued by several officers until he ran into the side of a police car. Two of the officers who witnessed the wreck were one hundred percent certain that Defendant was the driver of the car. The evidence was sufficient to support the convictions.

### III. Double Jeopardy

While admitting that he failed to raise the issues in the trial court, Defendant argues that his convictions for robbery and theft of property violate the constitutional protections against double jeopardy because they arose from the same criminal episode. He makes the same argument with respect to his convictions for felony evading arrest and misdemeanor evading arrest. Defendant asserts that despite the waiver, the trial court's failure to merge the convictions was plain error. The State concedes the trial court erred by failing to merge Defendant's convictions for theft and robbery but argues that Defendant's convictions for felony evading arrest and misdemeanor evading arrest did not mandate merger.

In order to preserve the double jeopardy issue for review, Defendant needed to first raise the issue in his motion for new trial and again in his appellate brief. *See State v. Bishop*, 431 S.W.3d 22, 43 (Tenn. 2014) (citing *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007)); *see also* Tenn. R. App. P. 3(e). When a defendant raises an issue in a motion for new trial, the trial court is able to consider the issue and make a ruling. *State v. Harbison*, 539 S.W.3d 149, 164 (Tenn. 2018). In this case, Defendant admittedly raised the issues for the first time on appeal.

Under Tennessee Rule of Appellate Procedure 36(a), a court need not grant relief to a party "who fail[s] to take whatever action [is] reasonably available to prevent or nullify the harmful effect of an error." An appellate court may decline to consider issues that a party failed to properly raise. *Bishop*, 431 S.W.3d at 43 (citing *State ex rel. D'Amore v. Melton*, 212 S.W.2d 375, 376 (Tenn. 1948)). Issues not raised at trial may be reviewed in the discretion of the appellate court for plain error when these five factors are established: (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the defendant did not waive the issue for tactical reasons; and (e)

consideration of the error is necessary to do substantial justice. *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016).

The Double Jeopardy Clause of both the United States and the Tennessee Constitutions guarantee that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

Defendant contends that the trial court's refusal to merge his convictions implicates the third type of double jeopardy protection: protection against multiple punishments for the same offense. The Tennessee Supreme Court has divided such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense"; and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." *Id.* (citing *Watkins*, 362 S.W.3d at 543-44). Both of Defendant's claims are multiple description claims. To address a multiple description claim, we must apply the two-pronged test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556.

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted). In other words, if the legislature clearly intended to permit multiple punishments, then a defendant's multiple convictions do not violate double jeopardy principles. Similarly, if the legislature clearly intended to

preclude multiple punishments, then a defendant's multiple convictions violate double jeopardy principles. It is only when the legislature's intent is unclear that we apply the "same elements test" from *Blockburger*. *Smith*, 436 S.W.3d at 767.

## A. Theft/Robbery

As we have stated many times before, in order to receive plain error review, Defendant must establish all five factors. *Martin*, 505 S.W.3d at 504. In this case, the record clearly establishes what occurred in the trial court. *Id.* Defendant was convicted under two separate statutes, robbery and theft, and there is no clear legislative intent precluding multiple punishments. *See* T.C.A. §§ 39-13-401 (defining robbery); 39-14-103 (defining theft of property). It is clear Defendant did not waive the issue for tactical reasons. *Martin*, 505 S.W.2d at 504. Also, we must determine if a clear and unequivocal rule of law was breached. *Id.* If so, and the convictions violate double jeopardy, then a substantial right of Defendant was adversely affected and consideration of the error is necessary to do substantial justice. *Id.*

Because Defendant presents a multiple description claim with respect to his convictions for robbery and theft, and no clear legislative intent prohibits dual convictions, the "same elements" test is necessary for our analysis of the issue. *Smith*, 436 S.W.3d at 767. Moving on to the first step in the *Blockburger* analysis, there is no question that the convictions for theft and robbery arose out of the same act or transaction—Defendant approached the victim at the Redbox machine, demanded her keys, and ultimately drove away with her car with her purse and other belongings inside.

The second step of the *Blockburger* analysis includes an examination of the elements of each conviction to determine if they are the same. Defendant was convicted of robbery and theft. T.C.A. § 39-13-401, -14-103. Appellate courts "will presume that multiple convictions are not intended by the General Assembly" when the elements of the offenses are the same or when one offense is a lesser included offense of the other. *Watkins*, 362 S.W.3d at 557. Theft is a lesser-included offense of robbery. *State v. Bowles*, 52 S.W. 3d 69, 79 (Tenn. 2001) ("It is uncontested that theft is a lesser-included offense of robbery.").

Looking at the facts of this case in particular, Defendant approached the victim at the Redbox machine and demanded her keys. She told him they were in the car. Defendant could not find the keys, so he again demanded keys from the victim. She took her spare keys out of her pants pocket and handed them to Defendant. He walked back to her car, started the car, and drove away with her purse inside the car. The robbery of the victim was not complete until Defendant took her car or, as important for our analysis, until the theft was complete. *See State v. Henderson*, 531 S.W.3d 687, 698 (Tenn. 2017) (holding that a robbery is "complete once the accused has completed his theft of all the

property he intended to steal."). Recently, in *State v. James Allen Jenkins*, No. E2017-01983-CCA-R3-CD, 2018 WL 6113468, at *13 (Tenn. Crim. App. Nov. 20, 2018), *perm. app. __*, a panel of this Court concluded that dual convictions for aggravated robbery and theft arising from the same event violated double jeopardy because the commission of the theft was "wholly incorporated into the offense of aggravated robbery" so the offenses were the "same" for the purposes of *Blockburger. Id.*

Similarly, as a matter of plain error, we hold that principles of double jeopardy bar Defendant's convictions of both robbery and theft in this case. *See* Tenn. R .App. P. 36(b); *State v. Lewis*, 958 S.W.2d 736, 738 (Tenn. 1997). A clear an unequivocal rule of law was breached because the theft of the victim's car and purse was subsumed by the robbery such that dual convictions violate the constitutional protection against double jeopardy. Because dual convictions violate double jeopardy, a substantial right of the accused was adversely affected. Defendant was convicted of two crimes that should have merged. In our view, consideration of the error is necessary to do substantial justice. Thus, Defendant is entitled to plain error relief, and the convictions should be merged. *State v. Hayes*, 7 S.W.3d 52, 56 (Tenn. Crim. App. 1999); *State v. Addison*, 973 S.W.2d 260, 267 (Tenn. Crim. App. 1997) ("Such a merger and imposition of a single judgment of conviction protects against double jeopardy and preserves the validity of the jury verdicts for future avoidance of problems related to unnecessarily dismissed 'charges' or 'convictions.'"). Accordingly, upon remand, the judgment of conviction for theft should indicate that it is merged into a single conviction for robbery, and amended judgments should be entered reflecting merger. The trial court should also note in the "Special Conditions" box on Counts One and Two that the conviction in Count Two (theft) merged with the conviction in Count One (robbery). *See State v. Berry*, 503 S.W.3d 360, 364 (Tenn. 2015).

### B. Evading Arrest

Defendant also argues that his convictions for felony evading arrest and misdemeanor evading arrest violate the protection against double jeopardy. Specifically, Defendant insists that he has been convicted of multiple violations of the same statute, a "unit of prosecution claim" for double jeopardy purposes and, despite his failure to raise the issue in an objection at trial or in a motion for new trial, should receive relief as a matter of plain error. The State, on the other hand, analyzes the issue under the "multiple description" analysis and concludes that Defendant is not entitled to plain error relief because no clear and unequivocal rule of law was breached by the trial court.

Again, in order to receive plain error relief, Defendant must establish all five factors. *Martin*, 505 S.W.3d at 504. Here, what happened in the trial court is clear. Defendant was convicted of felony evading arrest pursuant to Tennessee Code Annotated section 39-16-603(b)(1) and misdemeanor evading arrest pursuant to Tennessee Code

Annotated section 39-16-603(a)(1). It is also clear that Defendant did not waive the double jeopardy issue for tactical reasons.

We must also determine if a clear and unequivocal rule of law was breached. We disagree with Defendant's conclusion that the dual convictions for felony evading arrest and misdemeanor evading arrest fall under the "unit of prosecution" analysis. This type of analysis only applies "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense." *See State v. Smith*, 436 S.W.3d 751, 767 (Tenn. 2014) (citing *Watkins*, 362 S.W.3d at 543-44) (pointing out that the defendant presented a unit of prosecution claim because he was convicted of "multiple counts under both subsections (a)(1) and (a)(2)"). However, our supreme court has applied the "multiple description" analysis to consider whether double jeopardy prohibited multiple convictions under different subsections of one code section. *See id.* at 766-68 (analyzing convictions under Tennessee Code Annotated section 39-16-502(a)(1), (a)(2), and (a)(3) as multiple description claim). Defendant cites this Court's opinion in *State v. Travis Grover Richardson*, No. E2013-02250-CCA-R3-CD (Tenn. Crim. App. Oct. 10, 2014), *perm. app. denied* (Tenn. Feb. 13, 2015), to support his argument that this Court should utilize a unit of prosecution analysis. We disagree. In *Travis Grover Richardson*, the defendant was charged with two violations of Tennessee Code Annotated section 39-16-603(b)(1) whereas in this case, Defendant was charged with one violation of Tennessee Code Annotated section 39-16-603(a)(1) and one violation of Tennessee Code Annotated section 39-16-603(b)(1). Defendant received multiple convictions under different subsections of the same statute. Therefore, the proper analysis is the multiple description analysis.

As we explained above, the first step in a multiple description analysis is to determine whether the General Assembly expressed any intent to permit or preclude multiple punishments. Here, the legislative intent is unclear, so we must apply the *Blockburger* test. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The State suggests that the "two flights" did not arise from the same act or transaction. The State contends that Defendant first fled in order to avoid being arrested for robbery and then fled in order to avoid being held responsible for any injuries sustained by passengers in the car he crashed into in the intersection. Thus, the State insists that no clear an unequivocal rule of law was breached and that Defendant is not entitled to plain error relief.

We agree with the State's conclusion but feel their reliance on *State v. Itzol-Deleon*, 537 S.W.3d 434 (Tenn. 2017), to determine if the multiple convictions arose from the same act or transaction misplaced. In *Itzol-Deleon*, the Tennessee Supreme Court looked to other jurisdictions for guidance on determining what constitutes the "same act or transaction" for double jeopardy purposes and ultimately fashioned a set of non-exclusive factors to utilize in a "multiple description case involving a single victim,

- 13 -

[when] the defendant claims that his multiple convictions arise from the same act or transaction." *Id.* at 450. These factors were specifically tailored for utilization in sex offense cases and, in our view, do not apply to the case herein.[1] If any portion of *Itzol-Deleon* were to apply to this case, the more general factors quoted with approval by the Tennessee Supreme Court from the Kansas Supreme Court would be helpful. Those factors are:

> (1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct.

*Id.* (quoting *State v. Schoonover*, 133 P.3d 48, 62 (Kan. 2006)).

In this case, Defendant robbed the victim at the Redbox machine. The robbery was complete the moment he fled in the car. Defendant was soon thereafter pursued by Officer Winsett and Lieutenant Rickett. When one of the officers turned on his blue lights to signal to Defendant to stop, Defendant accelerated and began his first act of evasion. While driving, Defendant disregarded a stop sign and plowed into a car full of people. He was no longer able to evade arrest in a motor vehicle because the car was totaled. Defendant's criminal act alleged in Court Three was completed. At that point, Defendant exited the vehicle, ran on foot, and initiated the second act of evasion, alleged

---

[1] The *Iztol-Deleon* factors are as follows:

1. The nature of the defendant's actions that are alleged to be in violation of the various statutes ("the defendant's actions");
2. The temporal proximity between the defendant's actions;
3. The spatial proximity of the physical locations in which the defendant's actions took place;
4. Whether the defendant's actions contacted different intimate areas of the victim's body and the degree of proximity of those areas to each other;
5. Whether the defendant's contact with different intimate areas of the victim's body was deliberate or merely incidental to facilitating contact with another intimate area;
6. Whether the defendant deliberately used different parts of his body (or objects) to assault the victim sexually;
7. Whether the defendant's assault was interrupted by some event, giving him an opportunity to either cease his assault or re-form a subsequent intent to commit a subsequent assault;
8. Indications of the defendant's intent to commit one or more than one sexual assault on the victim; and
9. The extent to which any of the defendant's actions were merely ancillary to, prefatory to, or congruent with, any of his other actions, thereby indicating unitary conduct.

in Count Four. Thus, we conclude that the evading arrest convictions did not arise from the same act or transaction.

In making that conclusion, we must acknowledge that there are several unreported cases of this Court that come to a different conclusion, i.e., that dual convictions for felony evading arrest and misdemeanor evading arrest violate double jeopardy principles when the dual convictions are premised on the ground that one portion of a police pursuit was on foot and another portion was by motor vehicle. *See State v. George Joseph Raudenbush, III*, No. E2015-00674-CCA-R3-CD, 2017 WL 2443079 (Tenn. Crim. App. June 6, 2017), *perm. app. denied* (Tenn. Oct. 3, 2017); *State v. William Keith Paulson*, No. E2007-02621-CCA-R3-CD, 2009 WL 3047004, at *6-8 (Tenn. Crim. App. Sep. 4, 2009), *no perm. app. filed*; *State v. Gregory Mullins*, No. E2004-02314-CCA-R3-CD, 2005 WL 2045151, at *7 (Tenn. Crim. App. Aug. 25, 2005), *perm. app. denied* (Tenn. Feb. 6, 2006); *State v. Prentice C. Calloway*, No. M2004-01118-CCA-R2-CD, 2005 WL 1307800, at *6-8 (Tenn. Crim. App. June 2, 2005), *no perm. app. filed*. In each of those cases, this Court held that the pursuit constituted one "continuous criminal episode rather than two discrete acts supporting multiple convictions." *William Keith Paulson*, 2005 WL 1307800, at *7; *Gregory Mullins*, 2005 WL 2045151, at *7; *Prentice C. Calloway*, 2005 WL 1307800, at *7. Similarly, this Court has held that dual convictions for felony evading arrest and misdemeanor evading arrest violate double jeopardy principles when those convictions were based on a defendant's fleeing in one vehicle and transferring to another vehicle mid-pursuit. *State v. Timothy Dewayne Williams*, No. W2008-02730-CCA-R3-CD, 2010 WL 1172206, at *4 (Tenn. Crim. App. Mar. 26, 2010), *perm. app. denied* (Tenn. Sept. 2, 2010). However, all of these cases with the exception of *George Joseph Raudenbush, III* were decided prior to *Watkins* and utilize the analysis set forth in *State v. Denton*, 938 S.W.2d 373, 378 (Tenn. 1996), which was abrogated by *Watkins*.[2] *George Joseph Raudenbush, III*, a retrial whose facts were established prior to *Watkins*, was decided after *Watkins* and a panel of this Court remanded the case for merger of the convictions sua sponte without analysis or mention of *Watkins*.[3]

*Denton* was abrogated by *Watkins* − the clear rule of law. *Watkins*, 362 S.W.3d at 556. Defendant fled in the car, crashed the car, and then fled on foot. Consequently, we conclude that Defendant's evading arrest in the car and evading arrest on foot were not

---

[2] In *Denton*, the court set out a four-part balancing test for use in determining whether a defendant has received multiple punishments for the same act in violation of the protection against double jeopardy. 938 S.W.2d at 379-81. Courts are directed to: (1) determine whether each offense requires proof of an element that the other does not; (2) determine whether different evidence was used to prove each separate offense; (3) consider whether there were multiple victims; and (4) examine the purposes of the statutes prohibiting the criminal conduct to determine whether the statutes serve different purposes. *Id.*

[3] Interestingly, *George Joseph Raudenbush, III* relied on an unpublished case decided before *Watkins*, *Timothy Dewayne Williams*. 2010 WL 1172206, at *4. The analysis in *Timothy Dewayne Williams* was called into question by this Court in *Travis Grover Richardson*. 2014 WL 5099585, at *9.

- 15 -

part of the same act or transaction. The crash was an intervening force and Defendant, in our view, formed an additional intent to flee from officers after the crash. Because the actions were not part of the same act or transaction, there was no breach of a clear and unequivocal law and consideration of the issue is not necessary to do substantial justice. Thus, Defendant is not entitled to plain error relief.

However, even if we were to determine that the convictions arose from the same act or transaction, we would determine that the trial court did not breach a clear and unequivocal rule of law. The second step of the *Blockburger* test is to determine whether the elements of the offenses are the same. If each offense contains an element that the other offense does not, the statutes do not violate double jeopardy. Tennessee Code Annotated section 39-16-603 provides that

> (a)(1) Except as provided in subsection (b), it is unlawful for any person to intentionally conceal themselves or flee by any means of locomotion from anyone the person knows to be a law enforcement officer if the person:
> (A) Knows the officer is attempting to arrest the person; or
> (B) Has been arrested.
> . . . .
> (3) A violation of subsection (a) is a Class A misdemeanor.
> (b)(1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.
> . . . .
> (3)(B) If the flight or attempt to elude creates a risk of death or injury to innocent bystanders, pursuing law enforcement officers, or other third parties, a violation of this subsection (b) is a Class D felony . . . .

In our view, a comparison of the two offenses reveals that the elements of (a)(1) and (b)(1) are different. *See William Keith Paulson*, 2009 WL 3047004, at *7 (coming to this same conclusion despite finding double jeopardy violation under *Denton* analysis). Section (a)(1) specifically provides that the accused has to know that the officer is attempting an arrest while subsection (b) merely requires a signal to stop. In addition, subsection (b) requires a specific method of evading, by use of a motor vehicle, which is specifically excluded from subsection (a) by the use of the words "[e]xcept as provided in subsection (b)." Thus, a defendant could never commit a violation of (a)(1) while "operating a motor vehicle on any street, road, alley or highway." T.C.A. §39-16-603(b)(1). Finally, subsection (b) addresses the creation of a risk of death or injury to third parties, resulting in an increase of punishment. Moreover, it is arguable that the "purposes of the two statutory provisions are sufficiently distinct as to support a finding

that the two offenses are not the same for double jeopardy purposes." *Gregory Mullins*, 2005 WL 2045151, at *9 (Welles, J., dissenting). Based on the above analysis and the facts of this case, we conclude Defendant's convictions for misdemeanor evading arrest and felony evading arrest do not violate a clear and unequivocal rule of law. Consequently, Defendant is not entitled to plain error relief.

### IV. Sentencing

Defendant challenges his sentence on appeal. He starts his complaint by arguing that the trial court erred by enhancing his sentence to the maximum in the range for each conviction on the basis of a mistaken "belief that the jury should have found [Defendant] guilty of aggravated robbery instead of robbery." Defendant disagrees with the trial court's application of several enhancement factors and failure to consider mitigating factors. Additionally, Defendant complains that the trial court ordered the sentences to run consecutively and denied any form of alternative sentencing. Defendant also asserts the trial court erred by failing to apply the amended theft statute to his conviction for theft and improperly designated him as infamous for a misdemeanor conviction. The State posits that the trial court properly imposed sentences within the range and did not abuse its discretion.

### A. Sentence Length

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). This deferential standard does not permit an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The defendant bears the burden of proving that the sentence is improper. T.C.A. § 40-35-101, Sentencing Comm'n Cmts.

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any

statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4). The weighing of various enhancement and mitigating factors is within the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). This Court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709.

The trial court herein determined that Defendant was a Range I, standard offender. The trial court found multiple enhancement factors starting with a finding that Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, including arrests, pending indictments, and dismissals. T.C.A. § 40-35-114(1). The trial court gave "great, great, great, great weight" to this factor. The trial court also found that Defendant had previously failed to comply with the conditions of a sentence involving release into the community and possessed a firearm during the commission of the offense. *Id*. at -114(8), (9). The trial court found Defendant possessed a firearm even though the jury ultimately found Defendant guilty of robbery rather than aggravated robbery. The trial court also determined that Defendant was released on bond at the time he committed the offenses and gave "great and significant weight" to that factor. *Id*. at -114(7). The trial court also determined that the offenses involved more than one victim. *Id*. at -114(3). The trial court gave "great, significant, enormous weight" to the fact that Defendant had previously committed acts as a juvenile that would constitute a felony if committed by an adult. *Id*. at -114(16). The trial court noted the twelve adjudications on Defendant's juvenile history, eight of which were crimes of violence.

Defendant claims the trial court applied these enhancement factors in error. We disagree. Defendant had multiple arrests in his two years as an adult, supporting the application of enhancement factor (1). The trial court also properly applied enhancement factor (9), that Defendant possessed a firearm during the commission of the offense. "[T]he fact that the jury did not find beyond a reasonable doubt that the Defendant possessed a firearm does not preclude the trial court from finding by a preponderance of the evidence that the Defendant possessed a firearm during the commission of these offenses." *State v. Kenneth Hayes*, No. W2010-00309-CCA-R3-CD, 2011 WL 3655130, at *11 (Tenn. Crim. App. Aug. 19, 2011), *perm. app. denied* (Tenn. Jan. 16, 2015). Additionally, the trial court properly applied enhancement factor (8), that Defendant previously failed to comply with the conditions of a sentence involved release into the community, enhancement factor (13), that Defendant was released on bail or pretrial

release when he committed the crime, and enhancement factor (16), that Defendant committed acts as a juvenile that would constitute felonies if committed by an adult. The application of all of these enhancement factors were supported by the presentence report. Lastly, the trial court properly found that enhancement factor (3), that the offense involved more than one victim, applied to the felony evading arrest offense because the proof showed Defendant crashed into a car containing multiple people. The trial court found no mitigating factors. The trial court followed the proper sentencing procedure and sentenced Defendant to a sentence within the range for each conviction. The trial court did not abuse its discretion in sentencing Defendant to the maximum possible sentence for each conviction.

The trial court refused to merge the convictions, finding they were four separate crimes. The trial court sentenced defendant to the maximum sentence of six years for robbery, four years for theft of property, four years for felony evading arrest, and eleven months and twenty-nine days for misdemeanor evading arrest. We have already noted that Defendant's convictions for robbery and theft should merge, resulting in a reduction of Defendant's total effective sentence by four years.

## B. Consecutive Sentences

Defendant also complains that the trial court ordered the sentences to run consecutively because his criminal history as a juvenile did not support a finding that he had an extensive criminal history and nothing in the record indicated that he was a dangerous offender. The trial court, after determining that Defendant was "an offender whose record of criminal activity is, in fact, extensive," and was a "dangerous offender," ordered the sentences to run consecutively to each other. The trial court commented that Defendant was a "poster child" for consecutive sentences and that the aggregate length of the sentences ordered were reasonably related to the severity of the offenses for which Defendant had been convicted. As a result, the trial court ordered each of the sentences to be served consecutively.

In *State v. Pollard*, 432 S.W.3d 851 (Tenn. 2013), the Tennessee Supreme Court expanded its holding in *Bise* to also apply to decisions by trial courts regarding consecutive sentencing. *Id.* at 859. This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id.* at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)). Tennessee Code Annotated section 40-35-115 provides the trial court may order sentences to run consecutively if the court finds any of the following by a preponderance of the evidence:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life of criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

. . . .;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

. . . .;

(6) The defendant is sentenced for an offense committed while on probation; . . . .

T.C.A. § 40-35-115(b). Defendant was merely twenty years old but had other felony charges pending at the time of his trial, several other arrests as an adult, and multiple juvenile adjudications that would have been felonies if committed by an adult. An extensive criminal history can be established by misdemeanors and a juvenile record. *See State v. Dickson*, 413 S.W.3d 735, 748 n.12 (Tenn. 2013). The trial court did not abuse its discretion as this one factor alone was enough to order consecutive sentencing. Likewise, the trial court did not abuse its discretion in determining Defendant was a dangerous offender. Defendant robbed the victim and crashed the victim's car into another car full of people. The trial court commented that Defendant was the type offender for whom consecutive sentencing was designed. In any event, even if the trial court failed to make the necessary findings under *State v. Wilkerson*, 905 S.W.2d 933, 935-38 (Tenn. 1995), we have already determined that the trial court did not err in ordering consecutive sentencing based on Defendant's extensive criminal history, and a decision to impose consecutive sentences will be upheld if the trial court finds one of the seven grounds. *Pollard*, 432 S.W.3d at 862. Moreover, the trial court found that Defendant committed the offenses while released on bond. This fact alone would have supported consecutive sentencing. Defendant is not entitled to relief.

## C. Alternative Sentencing

Defendant's next complaint about his sentence is that the trial court did not grant him an alternative sentence. The abuse of discretion standard of review is also applicable to "questions related to probation or any other alternative sentence." *Caudle*, 388 S.W.3d at 278-79. Thus, in reviewing a trial court's denial of an alternative sentence, the denial is presumptively reasonable so long as the sentence "reflect[s] a decision based upon the purposes and principles of sentencing." *Id.* The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W .2d 166, 169 (Tenn. 1991).

Pursuant to statute, only defendants actually sentenced to ten years or less are eligible for probation. *See* T.C.A. § 40-35-303(a) ("A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less. . . ."). Because each individual sentence was less than ten years, Defendant was technically eligible for probation. However, the trial court reviewed the purposes and principles of sentencing, noting particularly that Defendant had failed at probation on at least one prior occasion. Moreover, because Defendant committed robbery, a violent crime, he was ineligible for community corrections. *See* T.C.A. 40-36-106(C) (providing that only offenders who meet all of the statutory criteria are eligible for community corrections; one criterion is that offenders be "convicted of nonviolent felony offenses"). In our review, it is clear that the trial court properly considered the sentencing principles in denying alternative sentencing. The trial court did not abuse its discretion.

## D. *Application of Amended Theft Statute*

Defendant also argues, for the first time on appeal, that the trial court failed to properly apply the amended theft statute to his conviction for theft. This issue was not raised in Defendant's motion for new trial, thus the State argues that it is waived. In the alternative, the State deems the argument to be moot if this Court determines that the theft conviction should merge with the robbery conviction. We disagree with the State's assertion that the argument is moot. Regardless of our decision herein that Defendant's conviction for theft should merge with his conviction for robbery, the trial court was still charged with entering a judgment for Defendant's conviction for theft, and we have instructed the trial court to enter such a judgment on remand. *Berry*, 503 S.W.3d at 362-63.

We must not ignore the fact, however, that Defendant failed to raise this issue in a motion for new trial.[4] Thus, we can only review the issue for plain error. Again, issues not raised at trial may be reviewed in the discretion of the appellate court for plain error when all five factors are established. *Martin*, 505 S.W.3d at 504.

On November 18, 2014, Defendant was indicted for the theft of the victim's vehicle and other items, the total value of which was "$1,000 or more but less than $10,000." At the time, the offense was a Class D felony under Tennessee Code Annotated section 39-14-105(a)(3) (Supp. 2016). However, effective January 1, 2017, and prior to Defendant's trial in August 2017, Tennessee Code Annotated section 39-14-105(a) was amended by the legislature. *See* 2016 Pub Acts, c. 906, §§ 5, 17. The

---

[4] Defendant's motion for new trial alleged "[t]hat the guilty verdict of the jury is against the weight and sufficiency of the evidence, specifically with respect to the charge of Theft of Property o/ 1000." It does not allege that Defendant was convicted of the wrong classification of theft because of an amendment to the theft statute.

amended statute provides a new range of the "value of the property . . . obtained" for Class A misdemeanor, Class E felony, and Class D felony theft. *Id.* Thus, after January 1, 2017, Tennessee Code Annotated section 39-14-105(a)(1)-(3) provides:

> (a) Theft of property or services is:
> > (1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;
> > (2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);
> > (3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000)[.]

Under the amended statute, Defendant would be charged with either a D or an E felony, depending on the value of the property taken. The victim testified that she purchased the car for $13,000. When Defendant wrecked the car, the insurance company deemed the car totaled and valued the car at $5000. This testimony was uncontroverted. At the hearing on the motion for new trial, the trial court commented:

> The indictment, under then-existing Tennessee law or under current Tennessee law - - under current Tennessee law, it would have to be valued at more than twenty-five hundred dollars ($2,500), but less than ten thousand dollars ($10,000). And, if I were to sentence this Defendant under the law that existed at the time, or under current Tennessee law, it is still a class D felony, based on the value that the victim testified to in court.
>
> And, under 701, Subsection (b), a witness may testify to the value of the witness's own property or service. And the State did not have to present any other proof . . . .

We agree. The proof at trial established that the value of the car would constitute a Class D felony theft regardless of whether Defendant was convicted under the pre-2017 or post-2017 version of the theft statute. Thus, in our view, consideration of the issue is not necessary to do substantial justice, and Defendant has not established all five factors for plain error relief.[5]

---

[5] We acknowledge there is dissention among panels of this Court as to whether the amended theft statute applies to offenses committed prior to the amendment but tried and/or sentenced after the amendment and/or whether value is an element of the offense. *See e.g., State v. Ashley N. Menke*, No. M2017-00597-CCA-R3-CD, 2018 WL 2304275 (Tenn. Crim. App. May 21, 2018) (determining criminal savings statute does not apply to punishment for theft for plea entered to Class D felony theft prior to amendment of theft statute where sentencing occurred after amendment of theft statute), *perm. app.*

## D. Infamy

In his last issue, Defendant argues that the trial court erred in marking the checkbox that rendered him infamous on the judgment form for his misdemeanor evading arrest conviction. A review of the judgment form indicates that Defendant is correct. This appears to be a clerical error as a judgment of infamy should only be rendered "[u]pon conviction for a felony." T.C.A. § 40-20-112. On remand, the trial court should enter a corrected judgment form without checking the box that would render Defendant infamous for the misdemeanor evading arrest conviction. *See State v. Antwon Thomas*, No. W2014-00788-CCA-R3-CD, 2015 WL 9412860, at *11 (Tenn. Crim. App. Dec. 22, 2015), *perm. app. denied* (Tenn. June 24, 2016).

## Conclusion

For the foregoing reasons, Defendant's convictions are affirmed. However, the matter is remanded to the trial court for merger of the theft conviction with the robbery conviction. On remand, the trial court should enter new judgment forms for Counts One and Two, indicating on both judgment forms that Count Two merged with Count One. The trial court should also enter an amended judgment form for misdemeanor evading arrest that does not render Defendant infamous for the conviction. As a result of the merger of theft and robbery, Defendant's effective sentence is ten years, eleven months, and twenty-nine days.

_____
TIMOTHY L. EASTER, JUDGE

---

*granted* (Tenn. Oct. 11, 2018); *State v. Michael Eugene Tolley*, No. E2017-00571-CCA-R3-CD, 2018 WL 1661616 (Tenn. Crim. App. Mar. 18, 2018) (determining trial court exceeded its authority by applying amended theft statute to probation violation), *perm. app. granted* (Tenn. Aug. 9, 2018); *State v. Charles Keese*, No. E2016-02020-CCA-R3-CD, 2018 WL 1353697 (Tenn. Crim. App. Mar. 15, 2018) (holding trial court erred in applying amended theft statue prior to its effective date where offenses and trial both occurred prior to the effective date of the amendment of the theft statute), *perm. app. granted* (Tenn. Aug. 9, 2018). Our determination herein, however, does not require this panel to determine which, if any, of the panels is correct.