IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 27, 2022

**STATE OF TENNESSEE v. FRANKLIN SEAN SMITH**

**Appeal from the Circuit Court for Cocke County**
**No. 8037      Carter Scott Moore, Judge**
_____

**No. E2019-01515-CCA-R3-CD**
_____

Defendant, Franklin Sean Smith, was convicted of aggravated rape of a child, aggravated sexual battery, and incest. After a sentencing hearing, Defendant received a 60-year sentence. Defendant appeals, arguing that: (1) the trial court committed plain error in allowing the State's "numerous instances of improper prosecutorial arguments"; (2) the trial court committed plain error in allowing the State to introduce into evidence Defendant's letter to his wife; (3) the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (4) the trial court committed plain error in admitting the victim's forensic interview; (5) his convictions violated the protections of double jeopardy; (6) he received the ineffective assistance of counsel; (7) his convictions should be overturned based on the cumulative error doctrine; and (8) the evidence was insufficient to support the convictions. Following a thorough review of the record, we discern no error and affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

Jessica Sisk (at trial), Newport, Tennessee; Franklin Sean Smith (on appeal), Newport, Tennessee, Pro Se.[1]

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and Mark B. Strange and Joanne Sheldon, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] On October 1, 2019, after being informed by the trial court of his right to have the assistance of appellate counsel, Defendant clearly acknowledged his right and knowingly and voluntarily waived the right to counsel, adjudging himself equipped to represent himself on direct appeal.

# OPINION

Defendant was indicted by the Cocke County Grand Jury for aggravated rape of a child, aggravated sexual battery, and incest. The following facts were established during the trial:

Defendant's wife, Mrs. Smith, testified she and Defendant had three children, E.S., H.S., and A.S.[2] The events giving rise to this matter occurred when the victim, H.S., was three years old. The family lived in a camper van on the side of a hill while Defendant was building a permanent, bunker-style home on top of the hill. The two homes were "at least a football field length[]" apart. There was a locked cattle gate at the entrance to the property. On September 16, 2017, Mrs. Smith and Defendant were playing outside with their children near the bunker. Mrs. Smith left to cook supper and Defendant continued playing with the children. At some point, E.S. and A.S. joined Mrs. Smith in the camper. Defendant and H.S. remained on the hill. Mrs. Smith became distracted on her computer and delayed dinner. She called Defendant on the phone and asked if she could just make oatmeal. While Mrs. Smith was fixing dinner, Defendant and H.S. walked into the camper. H.S. immediately said, "momma, my pee-pee hurts." Mrs. Smith took H.S. into the bedroom to apply ointment to her "pee-pee" and closed the sliding door. Shortly thereafter, Defendant opened the door and asked Mrs. Smith why she had shut it. Mrs. Smith responded that she did not want E.S. to see her applying cream to H.S. Defendant left the room. Mrs. Smith wiped H.S., applied ointment, and changed her underwear. H.S. told Mrs. Smith her "pee-pee" was hurting because Defendant "wiped" her earlier. Mrs. Smith testified that H.S. "rolled over on all fours" and "started thrusting her hips and making like a dry humping motion[.]" H.S. continued saying, "daddy do this, daddy do this and daddy wipe[d] me." Mrs. Smith testified that H.S. told her Defendant took off his pants and H.S.'s pants and underwear. H.S. continued to make the thrusting motion.

Mrs. Smith told H.S. not to talk to Defendant about the incident. Mrs. Smith left the bedroom to finish preparing the oatmeal and began to panic. Defendant asked her what was wrong and Mrs. Smith tried "not to let on[.]" Mrs. Smith took H.S. and A.S. to the bunker while E.S. and Defendant remained in the camper. Mrs. Smith testified that once they entered the bunker, H.S. pointed to a red cooler on the floor and said, "That where daddy tell me to lay down." Mrs. Smith asked H.S. how Defendant wiped her and H.S. took Mrs. Smith to a closet and "pointed straight up." Mrs. Smith reached up to the top shelf in the closet and found a hand towel and a package of wet wipes.

---

[2] It is the policy of this Court to protect the identity of minor victims.

Mrs. Smith and the girls walked back to the camper. Defendant asked Mrs. Smith what H.S. had said in the bedroom. Mrs. Smith asked to speak with Defendant outside. Once outside, Mrs. Smith said, "H.S. said you assaulted her." Mrs. Smith recalled that Defendant scoffed and said "assaulted her?" Mrs. Smith, crying, asked Defendant to tell her he "didn't do this." Mrs. Smith testified Defendant said, "It doesn't matter, I'm not going to explain myself." Mrs. Smith said Defendant grew angry and told her "everything was [her] fault and that [she] wouldn't read [her] Bible and that he couldn't be the Christian or the man he was supposed to be because of [Mrs. Smith.]" Mrs. Smith again pleaded with Defendant to deny assaulting H.S. Mrs. Smith said Defendant "got right up in [her] face and he said, [']As a matter of fact, I did do it and it's all your fault.[']"

Defendant went into the camper and screamed goodbye to E.S., saying, "[Y]ou'll never see me again and this is all your mother's fault." Defendant then left the property. Mrs. Smith called 911, Defendant's brother, and Defendant's parents. She placed the children into the car and hid in her neighbor's driveway. Mrs. Smith drove to the cattle gate as Defendant returned in a large SUV. Mrs. Smith reversed her car upon seeing Defendant, but then stopped and got out of it. Defendant asked for Mrs. Smith's phone.

Two officers with the Cocke County Sheriff's Department arrived while Defendant and Mrs. Smith were talking. The officers separated Mrs. Smith and Defendant to interview them.

Cocke County Sheriff's Department Detective Robert Thornton arrived and interviewed Mrs. Smith along with the officer. Mrs. Smith walked around the property with Detective Thornton and the officer. They located the hand towel, package of wet wipes, and H.S.'s underwear. The officers collected the items as evidence. Detective Thornton escorted Mrs. Smith and the children to the hospital in Newport. H.S. was subsequently transferred to East Tennessee Children's Hospital in Knoxville for a physical evaluation.

On cross-examination, Mrs. Smith explained H.S. had "redness in her pee-pee area and whenever they evaluated her at the hospital, I asked specifically if she had a yeast infection and the doctor told me no, that it was injury." Mrs. Smith denied that H.S. had a rash. Mrs. Smith read a statement she had written with Detective Thornton in which she stated, "[H.S.] said her pee-pee had hurt and she had been battling a rash[.]"

Detective Thornton testified that Mrs. Smith provided a statement to him while they walked around the property. The statement was admitted as an exhibit and related what H.S. had told Mrs. Smith. Detective Thornton was present during an interview between H.S. and a child advocate at Safe Harbor, a child advocacy center, on September 21, 2017. The State introduced a video recording of the interview and it was played before the jury

with no objection. There is a seven to eight second delay between the audio and the visual display in the recording. During the interview, H.S. stated that Defendant removed his pants and her pants and underwear. When asked what Defendant did to her, H.S. imitated a thrusting motion. H.S. said that what Defendant did felt "not good." H.S. said that afterwards, Defendant wiped her "pee-pee."

Dr. Lise Christensen conducted the physical evaluation of H.S. at East Tennessee Children's Hospital on September 17, 2017. Dr. Christensen testified that she found signs of trauma to H.S.'s genitals, noting an abrasion and "a little scratch" on two different areas of her genitals. She explained that these injuries were "consistent with some kind of force or injury to that area." Dr. Christensen did not find H.S. suffering from a rash or any other illness that would have caused her injuries. Dr. Christensen testified that she conducted a swab of H.S.'s external genitalia to collect a specimen from the area. She elaborated, "It would be very unlikely to have full penetration at her age. Most likely the trauma is done on the outside and that's more appropriate to obtain the specimen on the outside." On cross-examination, Dr. Christensen testified that H.S.'s hymen was intact. She again confirmed H.S. did not have any infections or rashes on her genitalia. On redirect examination, Dr. Christensen testified that H.S.'s injuries were "consistent with sexual assault." On recross-examination, Dr. Christensen stated her analysis was based on her physical examination of H.S. and information provided by Mrs. Smith.

Tennessee Bureau of Investigation ("TBI") Special Agent Forensic Scientist Kim Lowe examined the swabs of the victim's external genitalia and the victim's underwear. Agent Lowe "confirmed the presence of limited spermatozoa[]" on the external genitalia swabs and "confirmed the presence of spermatozoa" on the victim's underwear. Agent Lowe said that she tested the underwear in the front portion of the crotch region. After receiving buccal swabs of Defendant, Agent Lowe conducted a DNA comparison and found Defendant to be the major contributor for the sperm found in the underwear. Agent Lowe testified that either Defendant or someone from his paternal bloodline was the contributor for the sperm found on the external genitalia swabs. Agent Lowe testified that she did not test the hand towel or wet wipes because the internal policy was to test areas closest to the individual. Because she found "a positive" on the internal areas, she did not test any external items.

Defendant testified that on September 16, he and the children were playing up on the hill while Mrs. Smith was in the camper. Defendant said Mrs. Smith joined the family and that they entered the unfinished bunker together. Defendant recalled reminiscing with Mrs. Smith about a sexual encounter from the prior year. Defendant testified that Mrs. Smith aroused him but then said she had to go down and cook dinner. Defendant said that Mrs. Smith left with the children. Because Defendant was still aroused, he "decided to take care of it." Defendant claimed nobody was in the bunker when he masturbated.

- 4 -

Defendant testified that afterwards, he went to get wet wipes and saw H.S. standing at the door. Defendant did not believe H.S. saw him masturbate and proceeded to clean up the mess on the floor with the wet wipes and throw them under the window.

Defendant testified that once he noticed H.S., they talked the whole time and held hands on their way down to the camper. Defendant claimed he told Mrs. Smith that H.S. may need to be cleaned because "[a]s she[ was] walking down, she told me her pee-pee itched. She didn't say it hurt. She said it itched." Defendant testified that Mrs. Smith said she would clean H.S. after changing A.S.'s clothes. He explained that H.S. contracted yeast infections very often and that they would usually treat the infection with coconut oil. Defendant testified that H.S. had a yeast infection a few days prior to September 16.

Defendant recalled that after Mrs. Smith cleaned H.S., Mrs. Smith and H.S. went up the hill together. Defendant remembered Mrs. Smith going back and forth between the camper and the bunker a few times while he was on the computer and eating dinner. After dinner, Mrs. Smith asked to speak with Defendant outside about a "funny thing." Once outside, Mrs. Smith told Defendant H.S. had imitated a thrusting motion and said, "Daddy did like this." Defendant testified he didn't say anything at first. Then, he said H.S. walked in on him while he was masturbating in the bunker. Defendant said, "She asked me did you molest our daughter. Those were her exact words. And I said no. And I proceeded to say that she wouldn't understand and I was going to say something more about what we were going through, but as I said, you wouldn't understand." Defendant recalled that he sat down in a chair outside the house and Mrs. Smith was infuriated with him. Defendant testified that Mrs. Smith repeatedly asked him if he molested H.S. Defendant said he did not respond and went inside to get his keys. While inside, he told E.S., "mommy and daddy were arguing because mommy stopped reading the Bible and stopped loving God[.]"

Defendant admitted he sarcastically told Mrs. Smith he molested H.S. because Mrs. Smith had upset him. When asked whether he thought this was an appropriate response, he said, "We're always sarcastic." Defendant testified that he did not rape or touch his daughter in any way. Defendant said that after the argument, he went for a drive to cool off.

On cross-examination, the State introduced portions of letters Defendant wrote to his father-in-law and wife. In the letter to his father-in-law, Defendant theorized as to how his sperm arrived on H.S.'s underwear. He first claimed Mrs. Smith planted his sperm on H.S.'s underwear. Defendant read another section, offering that while he and H.S. were holding hands walking down the hill, his sperm likely transferred onto her hand. Then, due to her yeast infection, she scratched her genitals and the sperm transferred to her underwear. When asked which explanation was true, Defendant said, "You'll have to ask my wife." In the letter to his wife, Defendant suggested she may have planted the evidence.

Defendant then read, "I suppose it's also possible as corrupt as Cocke County is that it was planted or falsified."

On redirect examination, Defendant testified that he thought of multiple explanations as to how the sperm got in his daughter's underwear "to protect [his] wife." He said he wanted to give his wife "a way out" and to keep the family together.

At the conclusion of the proof, the jury found Defendant guilty on all charges. Following a sentencing hearing, the trial court imposed a sentence of 60 years for aggravated rape of a child, 12 years for aggravated sexual battery, and six years for incest. The trial court ordered the sentences to run concurrently. Defendant filed a motion for new trial, alleging the evidence was insufficient to support his convictions. In an amended motion for new trial, Defendant also raised the issues of prosecutorial misconduct, and double jeopardy. After a hearing on the motion for new trial, the court entered a written order denying relief. Defendant now appeals.

*Analysis*

Defendant argues on appeal that: (1) the trial court committed plain error in allowing the State's "numerous instances of improper prosecutorial arguments"; (2) the trial court committed plain error in allowing the State to introduce Defendant's letter to his wife;[3] (3) the State withheld evidence in violation of *Brady v. Maryland*; (4) the trial court committed plain error in admitting the forensic interview; (5) his convictions violate the protections of double jeopardy; (6) he received the ineffective assistance of counsel; (7) his convictions should be overturned on the basis of the cumulative error doctrine; and (8) the evidence is insufficient.[4]

Defendant concedes that he failed to make a contemporaneous objection at trial to several of the issues he raises on appeal and requests that this Court conduct a plain error review of those issues. Our supreme court has stated "that it is incumbent upon defense counsel to object contemporaneously whenever it deems the prosecution to be making improper argument." *State v. Jordan*, 325 S.W.3d 1, 57 (Tenn. 2010). A timely objection gives the trial court the opportunity to assess the State's argument and to take appropriate curative action. *Id.* at 57-58. Failure to contemporaneously object constitutes a waiver of the issue on appeal. *Id.* (citing Tenn. R. App. P. 36(a)).

---

[3] Defendant and the State confuse Defendant's letter to his father-in-law with Defendant's letter to Mrs. Smith. The relevant portions of text on appeal are from Defendant's letter to his wife.

[4] In Defendant's appellate brief, he generally requests a plain error review for his first issue, which contains several distinct matters. For clarity, we have separated it into issues (1) through (3).

However, this Court may, in our discretion, review an issue that has been waived for plain error. *See* Tenn. R. App. P. 36(b); *State v. Bishop*, 431 S.W.3d 22, 44 (Tenn. 2014) (noting that "the discretionary authority to invoke the plain error doctrine should be 'sparingly exercised'"). To establish plain error, a defendant has the burden of establishing the following factors:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law has been breached; (c) a substantial right of the accused has been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016). All five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Bishop*, 431 S.W.3d at 44.


## I.      *Improper Closing Argument*

Defendant did not object to any portion of the State's closing argument during the trial. He requests plain error relief from the trial court's allowance of "numerous instances of improper prosecutorial misconduct." The State responds that Defendant cannot establish plain error and is not entitled to relief.

Closing argument is "a valuable privilege that should not be unduly restricted." *Terry v. State*, 46 S.W.3d 147, 156 (Tenn. 2001). Closing arguments "have special importance in the adversarial process," allowing the parties "to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008). Attorneys "should be given great latitude in both the style and the substance of their arguments." *Id.* at 131. Our supreme court has recognized that "prosecutors, no less than defense counsel, may use colorful and forceful language in their closing arguments, as long as they do not stray from the evidence and the reasonable inferences to be drawn from the evidence, or make derogatory remarks or appeal to the jurors' prejudices." *Id.* (internal citations omitted). "[A] prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Id.*

Although not exhaustive, Tennessee courts have recognized five general areas of potential improper prosecutorial argument: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or

- 7 -

opinions as to the truth or falsity of any testimony or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; and (5) arguing or referring to facts outside the record unless the facts are matters of common knowledge. *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003). If the prosecution's argument is found to be improper, relief may only be granted when "the conduct was so improper or the argument so inflammatory that it affected the verdict to the [defendant's] detriment." *Id.* at 5. When measuring the prejudice caused by the argument, we consider: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. *Id.* "A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *Banks*, 271 S.W.3d at 131.

In regard to plain error relief, even if all five factors are present, "the plain error must be of such a great magnitude that it probably changed the outcome of the trial." *Id.* (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994)). In other words, to obtain relief, Defendant would have to show that the prosecutor's allegedly improper argument was "especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006).

Defendant complains that the State "introduced and argued false evidence during closing argument[,]" inflaming the jury's passions. Defendant took issue with the following statements:

> She is sitting with fluid in her body. All of us are adults here. When you have sex where does the sperm go when you ejaculate inside somebody? So these panties have been removed. The sperm is in the vaginal canal.
>
> . . . .
>
> Where was that sperm? In the crotch of this where the sperm came out of her vagina.

However, the proof established that Mrs. Smith changed H.S.'s underwear in the camper. Agent Lowe tested H.S.'s external genital swabs and the underwear H.S. wore to the hospital. Agent Lowe found sperm on the swabs and inside the "front portion of the crotch region" of H.S.'s underwear. The State made a reasonable inference based on the evidence in stating that sperm was in the vaginal canal. Further, shortly after the State made these comments, it stated, "it's the State's position and proof that this is because there was

- 8 -

ejaculation in her vagina and gravity [sic] it came out." Defendant has failed to prove that the State breached a clear and unequivocal rule of law and is not entitled to plain error relief.

Defendant also protests the prosecutor's statement regarding Mrs. Smith locating the hand towel in the bunker:

> This isn't a possibility. This is what actually happened.

The evidence established that Mrs. Smith and H.S. walked up the hill and found the hand towel in the bunker. Further, Mrs. Smith located the hand towel with the officers. The prosecutor's statement simply restates the evidence. Defendant has not shown that a clear and unequivocal rule of law has been breached and is not entitled to plain error relief.

Defendant argues the prosecutor improperly declared him guilty following her analysis of the proof:

> There's no possibilities. This is guilty. This is the decision.

The State's conclusion regarding its proof does not constitute improper closing argument. The record indicates that the State reviewed all of its evidence and submitted to the jury that because it proved each element, Defendant should be found guilty. Defendant has failed to prove the State breached a clear and unequivocal rule of law and is not entitled to plain error relief.

Finally, Defendant argues the prosecutor impermissibly accused him of lying during closing argument when she said:

> [Defendant] said he detests lying, hates it, loathes it, can't stand it, detests lying, but he lies to [Mrs. Smith] about raping [H.S.] and then says let's get our story straight.

During Defendant's testimony, he admitted that he sarcastically told Mrs. Smith he "did it," in regard to assaulting H.S. While the prosecutor mischaracterized the evidence, consideration of the error is not necessary to do substantial justice given the overwhelming proof against Defendant. Defendant is not entitled to plain error relief.

## II. *Admissibility of Defendant's Letters*

Defendant next alleges that the trial court committed plain error when it permitted the State to cross-examine Defendant with "irrelevant material of a prejudicial nature meant to stigmatize [D]efendant." The State responds that Defendant cannot establish plain error because Defendant's letter to his wife was relevant and aided the jury in assessing Defendant's credibility.

At the outset, we note that "rarely will plain error review extend to an evidentiary issue." *State v. Jonathan Mitchell Grimes*, No. W2014-00786-CCA-R3-CD, 2015 WL 3929694, at *10 (Tenn. Crim. App. June 26, 2015) (quoting *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App. Sept. 11, 2007), *no perm. app. filed*), *no perm. app. filed*.

Tennessee Rule of Evidence 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible. Tenn. R. Evid. 402. However, it may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice[.]" Tenn. R. Evid. 403. The term "unfair prejudice" has been defined as "[a]n undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Banks*, 564 S.W.2d 947, 951 (Tenn. 1978). "The admissibility of evidence under Rule 403 of the Tennessee Rules of Evidence is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of that discretion." *State v. Biggs*, 218 S.W.3d 643, 667 (Tenn. Crim. App. 2006) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997)).

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). A trial "court shall exercise appropriate control over the presentation of evidence and conduct of the trial when necessary to avoid abuse by counsel." Tenn. R. Evid. 611(a). "The scope of cross-examination is largely within the discretion of the trial court; that discretion will not be disturbed absent abuse." *State v. Lewis*, 803 S.W.2d 260, 262 (Tenn. Crim. App. 1990). "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility[.]" Tenn. R. Evid. 611(b). The right to effective cross-examination is subject to harmless error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 680-81 (1986); *State v. Howell*, 868 S.W.2d 238, 252-53 (Tenn. 1993); *Momon v. State*, 18 S.W.3d 152, 167 (Tenn. 1999).

The State cross-examined Defendant with letters he wrote to his father-in-law and wife. In the letters, Defendant provided possible explanations for how his sperm got on H.S.'s underwear. The State asked Defendant to read a portion of the letter to his wife which stated, "If anything, the evidence could have gotten there unintentionally if it was

on your hands. I supposed it's also possible as corrupt as Cocke County is that it was planted or falsified." Defendant chose to testify on his behalf and "a witness may be cross-examined on any matter relevant to any issue in the case, including credibility[.]" Tenn. R. Evid. 611(b). Defendant's explanations provided the jury with valuable information to determine his credibility. The State has not breached a clear and unequivocal rule of law and Defendant is not entitled to plain error relief.

### III.     Withholding Evidence

Defendant alleges that the State withheld body/dash camera footage in violation of *Brady v. Maryland* and requests relief under a plain error review. Because we have no evidence in the appellate record that body/dash camera footage was ever requested or even existed, we conclude that the record does not clearly establish what occurred in the trial court.[5] *See Martin*, 505 S.W.3d at 504 (to establish plain error, a defendant has the burden of showing that "(a) the record clearly establishes what occurred in the trial court[.]"). Defendant is not entitled to plain error relief.

### IV.     Admissibility of Forensic Interview

Defendant alleges that the trial court committed plain error when it allowed the State to introduce a video recording of H.S.'s forensic interview. Specifically, Defendant complains of the approximate seven-second delay between the audio and video. The State responds that the trial court properly admitted the video recording because it contained highly relevant information and the delay between the audio and video was not so great as to alter the video's meaning and unfairly prejudice Defendant.

In the video recording, the audio is roughly seven seconds ahead of the video. However, it is not difficult to understand H.S.'s words and accompanying body movements. During the interview, H.S. stated that Defendant took of his pants and her pants and underwear. When the interviewer asked H.S. what Defendant did, she imitated a thrusting motion. The audio and video are clearly transmitted in the recording. The evidence is highly probative and the delay did not unfairly prejudice Defendant. *See* Tenn. R. Evid. 403. Because Defendant has failed to show that the State breached a clear and unequivocal rule of law, Defendant is not entitled to plain error relief. *See Martin*, 505 S.W.3d at 504 (to establish plain error, a defendant has the burden of demonstrating that "(b) a clear and unequivocal rule of law has been breached[.]").

---

[5] Defendant included multiple documents as attachments to his brief in this Court on appeal. Attachments to appellate briefs that are not included in the technical record will not be considered by this Court on appeal. *See State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990).

*V.     Double Jeopardy*

Defendant argues that his convictions for aggravated rape of a child and aggravated sexual battery violate the protections of double jeopardy. The State responds that the offenses did not arise from the same act or transaction and therefore the convictions do not violate double jeopardy.

The Double Jeopardy Clause of both the United States and the Tennessee Constitutions guarantee that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10. The Double Jeopardy Clause provides three separate protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *State v. Watkins*, 362 S.W.3d 530, 541 (Tenn. 2012) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *abrogated on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989)). Whether multiple convictions violate the protection against double jeopardy is a mixed question of law and fact, which this Court will review de novo without any presumption of correctness. *State v. Smith*, 436 S.W.3d 751, 766 (Tenn. 2014) (citing *State v. Thompson*, 285 S.W.3d 840, 846 (Tenn. 2009)).

Defendant essentially argues that his convictions implicate the third type of double jeopardy protection: protection against multiple punishments for the same offense. The Tennessee Supreme Court has divided such claims into two categories: (1) unit-of-prosecution claims, "when a defendant who has been convicted of multiple violations of the same statute asserts that the multiple convictions are for the same offense"; and (2) multiple description claims, "when a defendant who has been convicted of multiple criminal offenses under different statutes alleges that the statutes punish the same offense." *Id.* (citing *Watkins*, 362 S.W.3d at 543-44). Defendant's claim is one concerning multiple description. To address a multiple description claim, we must apply the two-pronged test laid out in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Smith*, 436 S.W.3d at 767; *Watkins*, 362 S.W.3d at 556.

> In a *Blockburger* analysis, our primary focus is whether the General Assembly expressed an intent to permit or preclude multiple punishments. If either intent has been expressed, no further analysis is required. When the legislative intent is unclear, however, we must apply the "same elements test" from *Blockburger*. Under this test, the first step is to determine whether the convictions arise from the same act or transaction. The second step is to determine whether the elements of the offenses are the same. If each offense

- 12 -

contains an element that the other offense does not, the statutes do not violate double jeopardy.

*Smith*, 436 S.W.3d at 767 (internal citations omitted).

In the first step of the *Blockburger* analysis, we must determine whether the convictions arise from the same act or transaction. To determine whether the offenses resulted from the same transaction or occurrence in sex offense cases, we consider the following *Itzol-Deleon* factors:

> 1. The nature of the defendant's actions that are alleged to be in violation of the various statutes ("the defendant's actions");

> 2. The temporal proximity between the defendant's actions;

> 3. The spatial proximity of the physical locations in which the defendant's actions took place;

> 4. Whether the defendant's actions contacted different intimate areas of the victim's body and the degree of proximity of those areas to each other;

> 5. Whether the defendant's contact with different intimate areas of the victim's body was deliberate or merely incidental to facilitating contact with another intimate area;

> 6. Whether the defendant deliberately used different parts of his body (or objects) to assault the victim sexually;

> 7. Whether the defendant's assault was interrupted by some event, giving him an opportunity to either cease his assault or re-form a subsequent intent to commit a subsequent assault;

> 8. Indications of the defendant's intent to commit one or more than one sexual assault on the victim; and

> 9. The extent to which any of the defendant's actions were merely ancillary to, prefatory to, or congruent with, any of his other actions, thereby indicating unitary conduct.

*State v. Itzol-Deleon*, 537 S.W.3d 434, 450-51 (Tenn. 2017).

- 13 -

The proof established that Defendant removed his pants and the victim's pants and underwear. H.S. imitated a thrusting motion to Mrs. Smith and the forensic interviewer. H.S. told the forensic interviewer that what Defendant did felt "not good." Afterwards, Defendant wiped H.S.'s vagina. In consideration of the non-exclusive list of factors set forth in *Itzol-Deleon*, we note that Defendant's penetration and wiping of H.S. did not occur at the same time. Defendant ejaculated at least partially inside H.S., collected a wipe, and attempted to cover up his act. Defendant touched H.S.'s vagina with his penis and hand. While Defendant did not touch different intimate areas of H.S., after he completed the initial act, he deliberately touched her vagina again to conceal his assault. Thus, we conclude the convictions did not arise from the same act or transaction and there was no violation of the protection against double jeopardy.

## VI.    Ineffective Assistance of Counsel

Defendant contends that his counsel provided ineffective assistance by failing to properly investigate the case, failing to call certain witnesses, failing to adequately cross-examine the State's witnesses, along with "other deficient conduct." The State responds that because Defendant failed to raise ineffective assistance of counsel in his motion for new trial and failed to call counsel as a witness during the hearing on the motion for new trial, Defendant cannot establish that his counsel's performance was deficient or that he was prejudiced by any alleged deficiency and is therefore not entitled to plain error relief. We agree with the State. There is simply nothing in the record for this Court to review for such a determination. Defendant is not entitled to relief.

## VII.    Cumulative Error

Defendant argues that the cumulative effect of errors committed by the trial court entitles him to relief. The cumulative error doctrine applies to circumstances in which there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). No error at all renders a cumulative error claim barren. Defendant is not entitled to relief.

## VIII.    Sufficiency of the Evidence

Defendant alleges the evidence was insufficient to support his conviction for aggravated rape of a child. Specifically, Defendant contends that the State failed to prove

the element of unlawful sexual penetration. The State responds that the evidence was sufficient.

Our standard for reviewing the sufficiency of the evidence, both direct and circumstantial, is limited. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). We must afford the State "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007) (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). The determinative question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). Although we review de novo the application of the law to the facts, *Jordan v. Knox County*, 213 S.W.3d 751, 763 (Tenn. 2007) (citing *State v. Thacker*, 164 S.W.3d 208, 247-48 (Tenn. 2005)), we cannot substitute our own inferences for those drawn by the factfinders at trial, *State v. Lewter*, 313 S.W.3d 745, 747-48 (Tenn. 2010).

As charged in this case, Tennessee Code Annotated section 39-13-531(a) defines aggravated rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is three (3) years of age or less." T.C.A. § 39-13-531(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." *Id.* § 39-13-501(7).

The proof established that Defendant and H.S., who was three years old at the time of the incident, were alone in the bunker while Mrs. Smith and the other children were in the camper. Mrs. Smith testified that when Defendant and H.S. returned to the camper, H.S. immediately said her "pee-pee hurt." Mrs. Smith recalled H.S. saying "daddy do this . . . and daddy wipe[d] me" and H.S. demonstrating a "dry humping motion." When asked during the forensic interview what Defendant did, H.S. again imitated a thrusting motion, said it felt "not good," and said that Defendant wiped her. Dr. Christensen testified that H.S.'s vaginal injuries were consistent with sexual assault. Agent Lowe tested H.S.'s underwear and external genitalia swabs and identified Defendant's sperm on the underwear. Because there was only a limited profile for the external genital swabs, the results were inconclusive, but at least one of the two contributors was a male from Defendant's paternal bloodline. Defendant admitted, albeit sarcastically, that he told Mrs. Smith he assaulted the victim. In a light most favorable to the State, the evidence

- 15 -

overwhelmingly supported the element of unlawful sexual penetration.  Defendant is not entitled to relief.

## Conclusion

Based on the foregoing reasons, the judgments of the trial court are affirmed.


_____
TIMOTHY L. EASTER, JUDGE